**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Joseph J. CHRISTOPH,**
**Defendant–Appellant.**

**No. 89–3818.**

United States Court of Appeals,
Sixth Circuit.

Argued April 13, 1990.

Decided May 25, 1990.

---

counts of credit card fraud. For the reasons that follow, we affirm.

## I.

### A.

On March 1, 1989, a federal grand jury charged defendant with two counts of credit card fraud in violation of 18 U.S.C. § 1029(a)(1) and (2). Defendant first pleaded not guilty; however, on April 28, 1989, he withdrew his earlier plea and entered a guilty plea pursuant to a plea agreement.

The district court pronounced sentence on July 24, 1989, and the Judgment Including Sentence was entered on July 27, 1989. On August 3, 1989, the district court filed an Amended Judgment Including Sentence *nunc-pro-tunc*. On September 5, 1989, defendant filed a "Motion for Enlargement of Time to File Late Appeal" with the district court. In an affidavit to this court, defendant's counsel avers that she tendered a notice of appeal with the district court clerk contemporaneous with the motion for enlargement of time. On September 8, 1989, in a marginal entry, the district court granted enlargement of time. The district court clerk file-stamped the notice of appeal September 8, 1989. On February 23, 1990, we entered an order directing the parties to brief the jurisdictional issue of whether the notice of appeal was timely filed.

Catherine H. Killam, argued, Office of the U.S. Atty., Toledo, Ohio, for plaintiff-appellee.

Spiros P. Cocoves, argued, Toledo, Ohio, for defendant-appellant.

Before: KEITH and MILBURN, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

MILBURN, Circuit Judge.

Defendant-appellant Joseph Christoph appeals the district court's refusal to reduce his offense level under the United States Sentencing Guidelines ("Guidelines") for acceptance of responsibility and the district court's upward departure from the Guidelines upon his guilty plea to two

### B.

On April 16, 1988, a man identifying himself as Jeffrey Wells made a room reservation at the Radisson Hotel in Toledo, Ohio for Chris Joseph. Wells said that both he and Chris Joseph were associated with Concierge International. A man arrived by limousine to claim the room. Later, defendant Joseph J. Christoph, using the name Chris Joseph, charged the hotel and limousine services totaling $1,496.20 to an American Express card number which he was not authorized to use. Also during his stay at the Toledo Radisson, Christoph used a fictitious American Express card number to purchase a $3,763.00 Rolex watch from

Osterman Jewelry Store. The defendant admitted the two transactions; however, he maintained that he found the numbers in the trash and that he acted alone.

The Presentence Investigation Report ("PSI") set defendant's offense level at 13 points. This was based upon a minimum score of 13 because defendant "committed [the] offense as part of a pattern of criminal conduct from which he derived a substantial portion of his income." *See* Guidelines § 4B1.3. Defendant does not challenge this determination on appeal. However, he does challenge the district court's refusal to reduce the offense level for acceptance of responsibility.

At sentencing, the subject of defendant's acceptance of responsibility for his conduct first came up when the defendant objected to any implications in the PSI that he was part of an organized ring or acted in any manner other than alone. The government explained to the court that it was making no argument for enhancement on the grounds that defendant was part of an organized ring; however, the government took the position that defendant's insistence that he acted alone, despite strong evidence to the contrary, suggested a failure to accept responsibility. The government explained that while in jail on the present charges, defendant was able to obtain credit card numbers and fraudulently charge approximately $5,000 worth of clothing. These same credit card numbers used by Christoph had recently been used in a similar scheme in New Orleans. When the court questioned the defendant, he did not deny the conduct. The court agreed with the government that defendant's insistence that he acted alone "cast some doubt on his acceptance of responsibility."

The matter of acceptance of responsibility also came up when the district court dealt with defendant's objection to the PSI's failure to reduce his sentence for acceptance of responsibility. The PSI quoted the defendant as stating, "I'm not guilty as charged, but it's my responsibility." The record also shows that despite evidence defendant gained custody of the Rolex watch, he insisted at sentencing that he never obtained possession and should not be held responsible for restitution. When the district court threatened to hold a hearing on the issue, the defendant finally acquiesced in the government's position that he did gain possession of the watch. The defendant argued to the district court that "being prepared to plead guilty ... is accepting responsibility in a pretty big way," and, through counsel, suggested that he would be happy to answer any questions from the court.

The court responded:

Well, it seems to me that the fact that he has denied criminal responsibility for this act ... or denied committing a criminal act, but said I am taking responsibility anyway, and then goes over to the jail and promptly orders $5,000 worth of goods, and then here today he is jerking us around on whether or not the Rolex watch was ever received, and now today concedes, well I got it.

\* \* \* \* \* \*

I don't know what is going on in his mind, frankly, but it certainly isn't that degree of admission and contriteness that we look for in defendants so I am not going to eliminate the awarding of, or the denial of awarding two points for acceptance of responsibility.

J.A. at 26.

Based upon the determination that the defendant did not demonstrate an acceptance of responsibility, the sentencing range for defendant was a period of thirty-three to forty-one months. This was based upon the offense level of thirteen and a criminal history category of VI. The offense level was based upon a minimum score of thirteen for a defendant who maintains a criminal livelihood (*i.e.*, commits the offense as "part of a pattern of criminal conduct from which he derived a substantial portion of his income"). *See* Guidelines § 4B1.3.

The criminal history category was based upon a criminal history score of seventeen from past convictions including several instances of credit card fraud dating back to November 16, 1980. The PSI also revealed numerous instances of past criminal conduct and fifteen pending charges in several

states which did not enter the criminal history computation. Several of those instances involved fraudulent use of credit cards. Defendant did not object to the PSI's characterization of his past and pending criminal charges and convictions, but he did point out to the court that he had not been convicted of fraudulent use of a credit card in connection with the latest instance of obtaining goods while incarcerated.

The PSI also stated that the crime involved "more than minimal planning" and "a scheme to defraud more than one victim." This determination was not challenged. The PSI informed the district court that the combined presence of "more than minimal planning," and "a scheme to defraud more than one victim," the pending charges, and the several instances of criminal conduct which did not result in a conviction were all factors which might warrant departure from the Guidelines.

After hearing defendant and defendant's counsel, the court pronounced a sentence of sixty months, instead of the Guidelines range of thirty-three to forty-one months. The court explained its reasons as follows:

> Recognizing the guideline range, but also recognizing that I have before me a case that certainly involves more than minimal planning, extensive planning I think....
>
> But there was a good deal of planning that has gone into this and every other offense you have committed. And it is also a scheme to defraud more than one victim, and you have a very, very lengthy criminal record, all of which I think required this Court to depart from the guidelines upward. You have habitually victimized persons and merchants who own and accept credit cards, especially those who accept the American Express Card....
>
> In any case, it is extremely likely that whether in or out, you are going to continue this course of conduct, and I can only hope to make it more difficult for you, for a lengthier period of time.

J.A. 31–32.

The issues presented are: (1) whether defendant's notice of appeal was timely filed, (2) whether the district court erred in failing to reduce defendant's sentence for acceptance of responsibility, and (3) whether the district court erred by departing upward from the Sentencing Guidelines.

## II.

### A.

Under the Sentencing Reform Act of 1984, appellate review of a district court's departure from the Guidelines is limited. 18 U.S.C. § 3742(e). A sentence departing from the Guidelines should be affirmed unless "unreasonable." *Id.* In determining whether a departure is unreasonable, we consider whether "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." 18 U.S.C. § 3553(b).

Factual findings of the district court are given deference and will stand unless clearly erroneous. 18 U.S.C. § 3742(e). Also, a reviewing court must "give due deference to the district court's application of the guidelines to the facts." *Id.; see also United States v. Perez*, 871 F.2d 45, 47 (6th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989).

### B.

Because it appeared to us that the notice of appeal in this case was file-stamped forty-three days after entry of judgment, we raised the issue of jurisdiction *sua sponte* and ordered the parties to brief the issue. *See United States v. Hatfield,* 815 F.2d 1068, 1073 (6th Cir.1987) (timely notice of appeal is a mandatory and jurisdictional prerequisite). Both parties agree that defendant's notice of appeal was timely, and we conclude that they are correct.

The latest date for filing a notice of appeal in a criminal case is normally ten days following entry of judgment by the district court. Fed.R.App.P. 4(b). However, the district court may, for excusable neglect, grant an extension of up to thirty

days making the total filing period forty days from entry of judgment. *Id.* If a motion for extension of time is filed within the forty-day period, the district court retains power, even outside the forty-day period, to grant the extension and validate a notice of appeal filed within the forty days. *United States v. Kaden,* 819 F.2d 813, 817 (7th Cir.1987); *United States v. Lucas,* 597 F.2d 243, 245–46 (10th Cir.1979) (per curiam) (remanding for consideration of whether notice of appeal filed outside ten-day period but inside forty-day period was late because of excusable neglect); *see United States v. Hoye,* 548 F.2d 1271, 1273 (6th Cir.1977) (per curiam) (courts of appeals can overlook irregularities where fairness and justice require if a document is filed within the forty-day period).

In this case, the motion for enlargement of time was filed on the fortieth day. Thus, the extension granted by the district court on the forty-third day was effective to validate an otherwise timely notice of appeal.

■ The defendant argues that his motion for enlargement of time, filed on the fortieth day after entry of judgment, contained enough information that it should be treated as a timely notice of appeal. We agree. The motion named the parties, specified the court being appealed to, and gave the case number in the lower court. This is all that is required by Federal Rule of Appellate Procedure 3(c). Rule 3(c) expressly forbids dismissal "for informality of form or title." Even before this directive was given in Rule 3(c), we treated a motion for enlargement of time containing "most of the essential facts required of a notice of appeal" as a timely notice of appeal in *Hoye,* 548 F.2d at 1273. Thus, we will treat the defendant's motion for enlargement of time as a timely notice of appeal.

■ Even if we chose not to treat defendant's motion for enlargement of time as a timely notice of appeal, we would have jurisdiction over this case. According to the uncontroverted affidavit of defendant's counsel, a notice of appeal was tendered to the district court clerk at the same time as the motion for enlargement of time. Though the notice of appeal was not date-stamped until the forty-third day, it was effective to confer jurisdiction on this court because it was "received" by the clerk's office on the fortieth day. *United States v. Miller,* 666 F.2d 991, 993–94 (5th Cir.), *cert. denied,* 456 U.S. 964, 102 S.Ct. 2043, 2044, 72 L.Ed.2d 489 (1982); *United States v. Solly,* 545 F.2d 874, 876 (3d Cir.1976); *see United States v. Gleason,* 726 F.2d 385, 387 (8th Cir.1984) (per curiam); *United States v. Ford,* 627 F.2d 807, 810 (7th Cir.), *cert. denied,* 449 U.S. 923, 101 S.Ct. 324, 66 L.Ed.2d 151 (1980). *See also Baker v. Raulie,* 879 F.2d 1396, 1398 (6th Cir.1989) (per curiam) (citing *Houston v. Lack, Warden,* 487 U.S. 266, 108 S.Ct. 2379, 2384–85, 101 L.Ed.2d 245 (1988)) (in *civil* case notice of appeal is "filed" upon receipt). Having determined that we have jurisdiction to hear this appeal, we proceed to the merits of defendant's arguments.

## C.

■ We first consider whether the district court erred by refusing to reduce defendant's sentence for acceptance of responsibility. The Guidelines allow a two-level reduction in total offense level "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." Guidelines § 3E1.1(a). A guilty plea does not entitle a defendant to a sentence reduction as a matter of right. Guidelines § 3E1.1(c); *United States v. Wilson,* 878 F.2d 921, 923 (6th Cir.1989).

Without any authority for the proposition that a sentencing court is under a duty to inquire of a defendant concerning his or her remorse, the defendant criticizes the district court for its failure to question him at his invitation. The express language of the Guidelines convinces us that the burden is upon the defendant to "demonstrate" acceptance of responsibility—not on the sentencing court to lead the defendant into acceptance of responsibility. Guidelines § 3E1.1(a). Both defendant and his counsel were given ample opportunity before

the district court to demonstrate his acceptance of responsibility. In the sentencing judge's estimation, the defendant failed.[1]

We have stated:

Whether or not a defendant has accepted responsibility for his crime is a factual question [subject to the clearly erroneous standard of review].... Because the trial court's assessment of a defendant's contrition will depend heavily on credibility assessments, the "clearly erroneous" standard will nearly always sustain the judgment of the district court in this area.

*Wilson,* 878 F.2d at 923 (quoting *United States v. Thomas,* 870 F.2d 174, 176 (5th Cir.1989)). A sentencing judge's determination will "not be disturbed unless it is without foundation." *Id.*

The sentencing judge refused to award a sentence reduction because he failed to find the degree of "admission and contriteness" necessary to indicate an acceptance of responsibility. The facts the judge relied upon were defendant's repeated denial of the actions underlying the offenses he pleaded guilty to, his changing stories as to whether or not he received possession of the Rolex watch from Osterman's Jewelers, and his continuation of similar criminal activity while incarcerated. The record supports the district court, and we find no clear error.

### D.

■ We next consider whether the district court erred by departing upward from the Guidelines. In this circuit, review of a departure from the Guidelines is essentially a three-step process:

First, we assay the circumstances relied on by the district court in determining that the case is sufficiently "unusual" to warrant departure. That review is essentially plenary: whether or not circumstances are of a kind or degree that they may appropriately be relied upon to justi-

fy departure is, we think, a question of law.

Second, we determine whether the circumstances, if conceptually proper, actually exist in the particular case. That assessment involves factfinding and the trier's determinations may be set aside only for clear error.

Third, once we have assured ourselves that the sentencing court considered circumstances appropriate to the departure equation and that those factors enjoyed adequate record support, the direction and degree of departure must, on appeal, be measured by a standard of reasonableness.

*United States v. Rodriguez,* 882 F.2d 1059, 1067 (6th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1144, 107 L.Ed.2d 1048 (1990) (quoting *United States v. Diaz–Villafane,* 874 F.2d 43, 49 (1st Cir.1989)).

The defendant's principal argument with the district court's departure is that the district court relied on factors already considered and accounted for in the Guidelines. In general, departure is warranted only where "there exists an aggravating or mitigating circumstance of a kind, or to degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). For grounds to support departure, the district court cited the following factors: the crime involved the combined presence of more than minimal planning and a scheme to defraud more than one victim, and defendant had a very lengthy criminal record which was likely to continue.

At oral argument, the government conceded that since the offense level was already inflated to thirteen because of defendant's criminal livelihood, departure was not justified based upon the combined presence of more than minimal planning and a scheme to defraud more than one victim. The government relies upon defendant's exaggerated criminal history score alone.

---

**1.** By arguing that the district court merely accepted the recommendation of the PSI, defendant implies that the district court failed to make a factual determination on the issue of acceptance of responsibility. The judge's state-

ments in open court convince us that he did, in fact, make a factual determination, though, as we would expect, the judge used information from the PSI to support his determination.

Our holding in *Rodriguez* established that a departure is not rendered impermissible merely because the court cites some factors which will not support departure. In *Rodriguez*, we upheld the district court's departure where the court cited five reasons for departure, two of which we found were improper. 882 F.2d at 1066–67.

Concerning defendant's very lengthy criminal record and his propensity to commit future crimes, the Guidelines recognize that where "the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes," departure is permissible. Guidelines § 4A1.3. Much of the defendant's past criminal conduct did not enhance his criminal history category score. The offense committed while defendant was in jail awaiting sentencing did not affect the criminal history score. Neither did numerous pending charges nor past criminal conduct which did not result in a conviction. Moreover, the criminal history score calculated under the Guidelines reached seventeen points. Thirteen points placed the defendant in Category VI—from which there could be no more enhancement of sentence for the remaining four points without a departure. *See United States v. Belanger*, 892 F.2d 473, 475 (6th Cir.1989) (approving departure where criminal history score exceeds the 13 points needed to place defendant in category VI). Clearly these facts support the district court's determination that departure was warranted.

■ Having determined that departure was warranted, we consider whether the direction and degree of departure was reasonable. We have recognized that a "[district] court's discretion to depart from the Guidelines is broad," *Rodriguez*, 882 F.2d at 1068, and that "[t]rial judges are on the front line dealing with real live defendants, and are in a far better position than appellate courts to determine the circumstances justifying an upward departure." *United States v. Joan*, 883 F.2d 491, 496 (6th Cir. 1989). In determining reasonableness, it is proper for the district court to consider the likelihood of recidivism, prior similar adult conduct not resulting in criminal convictions, and the need to isolate the defendant from the community to prevent further crimes. *Id.* at 496. All these factors were present in this case. Thus, we hold that the district court's departure from the Guidelines range of thirty-three to forty-one months upward to sixty months was reasonable.

### III.

Accordingly, for the reasons stated, the judgment including sentence is AFFIRMED.