952 F.2d 404
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ricky Earl THOMPSON (90-6347), Allen Lane Stitt (90-6399),
Defendants-Appellants.
 Nos. 90-6347, 90-6399.
 United States Court of Appeals, Sixth Circuit.
 Jan. 15, 1992.
 
 Before MERRITT, Chief Judge; BOGGS, Circuit Judge; and HULL, District Judge.*
 BOGGS, Circuit Judge.
 
 
 1
 The defendants, Ricky Thompson and Allen Stitt, appeal their jury convictions and sentences on a charge of conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841 and 846. For the reasons set forth below, we affirm the convictions and the sentences of the defendants.
 
 
 2
 * A Kentucky State Police detective, operating undercover as a drug dealer, tried to buy marijuana or cocaine from Ricky Thompson and Thompson's "man," whom the Government identified as Allen Stitt. When that attempt failed, the detective offered to sell cocaine to the defendants. The defendants agreed to buy cocaine from the detective. The communications setting up the drug transaction occurred in a series of telephone conversations (April 5, April 10, and April 17, 1990). Most of these conversations were recorded by police. The April 5 and April 10 conversations were between the detective and Thompson. In these conversations, Thompson spoke of his man being involved in the decision. On April 17, the detective spoke to both Thompson and Stitt.
 
 
 3
 After agreeing to the drug purchase, the defendants traveled from Mays Lick, Kentucky, to a Lexington motel for the transaction. Stitt brought $4000 and at least one deed to property, which Stitt owned jointly with his wife, that was to serve as collateral for a mortgage for the balance of $20,000. The detective brought a fake cocaine brick, delivering it to the defendants after Stitt signed a mortgage to his farm and gave the detective the $4000. The defendants examined the cocaine and asked for tape, apparently to rewrap the cocaine after examining it. The defendants were arrested and charged while they examined the cocaine. The police video taped the transaction and the arrest. The indictment described the conspiracy as occurring "on or about April 17, 1990, in Fayette County, and elsewhere in the Eastern District of Kentucky."
 
 
 4
 The defendants raised two primary issues on appeal. They asked this court to reverse their convictions based on a finding that the admission of summaries of the taped telephone conversations between the detective and the defendants was reversible error. Alternatively, they asked this court to declare the district court's finding that the drug transaction involved one kilogram of cocaine to be clearly erroneous and therefore the sentence based on that amount to be erroneous. We deal first with the sentencing issue, then with the evidence issue.
 
 II
 
 5
 Defendants may seek review of a sentence if the sentence "was imposed in violation of law; ... was imposed as a result of an incorrect application of the sentencing guidelines; is greater than the sentence specified in the applicable guideline range ...; or was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable." 18 U.S.C. § 3742(a). Thompson and Stitt argued that a preponderance of the evidence established that they intended to purchase only three ounces of cocaine, that the court's finding that they intended to buy one kilogram is clearly erroneous, and therefore, that their sentencing level should have been 16 with a Sentencing Guideline range of 21-27 months rather than a level of 26 with a Guideline range of 63-78 (U.S.S.G. § 2D1.1) months. Our review of a district court's sentencing is deferential, particularly as to the district court's finding of facts. In reviewing a sentence, a court of appeals must "accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). The question here, however, is whether the district court did make an independent finding of fact as to the quantity of cocaine. Defendants claim that the jury made a finding that the offense involved one kilogram and the court then felt bound by that finding in sentencing.
 
 
 6
 The district court did instruct the jury that it could find the defendants guilty of a conspiracy with intent to distribute one kilogram of cocaine as the indictment read or it could find the defendants guilty of a conspiracy to possess three ounces of cocaine. The court explained that the conspiracy to possess three ounces was a lesser included offense in the charged offense--a conspiracy to possess with intent to distribute one kilo of cocaine.
 
 
 7
 It also seems clear that the court believed the jury had found a one-kilogram quantity to be involved. In the sentencing hearing, the court noted that the jury "had an opportunity to buy it [accept the defendants' theory that they sought only to buy three ounces for Stitt's personal use] ... and convict under a lesser charge, but they didn't. The jury under a much tougher standard of proof, that is, proof beyond a reasonable doubt, they rejected that argument." (Sent.Tr. 6-7).
 
 
 8
 The court did advert to what it considered the jury's finding. The court acknowledged that it could reduce the Guideline sentence to one that it considered "the right kind of sentence" for these defendants by making a finding of three ounces rather than the one kilogram it considered the jury to have found but said, "I cannot say from the bench here that the jury's verdict--I think by their verdict they said even though they didn't make a specific finding, I think they said by their verdict that you all intended to do a one-kilo deal. If they found beyond a reasonable doubt or disbelieved that you were in a kilo, they could have found you guilty of a lesser offense.... [T]he jury has spoken." (Sent.Tr. 16-17).
 
 
 9
 However, the record makes abundantly clear that the district court independently made the same finding it believed the jury had made. "And, of course, I have--even laying the jury's verdict aside I have no problem at all in ... finding a clear, not only preponderance but overwhelming weight of the evidence that clear and convincing that this was intended to be a one-kilo buy." (emphasis added) (Sent.Tr. 7). Earlier, in rejecting the government's contention that a two-kilo buy was involved, the court stated that it found "from the evidence that this was a one-kilo buy...." (Sent.Tr. 6). Finally, when the court was specifically asked by defense attorney Kinkead if it had "made an independent finding of fact that this was a one-kilogram transaction," the court responded, "Yes, sir. Yes, sir." (Sent.Tr. 14).
 
 
 10
 The court also indicated that its discretion in sentencing was extremely limited. "[R]eally I have little power in doing what I might personally think would be the right kind of sentence. The sentencing commission has sort of locked district judges in to a certain extent." (Sent.Tr. 16). This clearly refers, however, to the general structure of the Guidelines, not to the court's discretion in finding specific facts. The court also entered a formal judgment against each defendant stating that "the court adopts the factual findings and Guidelines application in the presentence report." (J.A. 79, 91). The presentence reports each stated that the amount involved was one kilogram.
 
 
 11
 Under Sixth Circuit precedent, while it is the task of the jury to find liability for the behavior that comprises the offense, it is the task of the court to find the sentencing facts, among them the quantity of the drug at issue in the offense. See United States v. Moreno, 899 F.2d 465, 471-74 (6th Cir.1990). The quantity of the drug is not an element of the charged offense under 21 U.S.C. § 841. Lesser quantities do not create lesser included offenses. The quantity is a sentencing fact that goes to the level of punishment meted out under the Guidelines, not to the nature of the offense. See ibid.
 
 
 12
 The district court must, therefore, make an independent finding as to the quantity of cocaine involved in this conspiracy to possess with intent to distribute cocaine. While we have approved a court's use of an advisory opinion from the jury on the issue of drug amount, see United States v. Prior, No. 90-4059 (6th Cir. Aug. 8, 1991), the district court's responsibility to make this finding remains intact.
 
 
 13
 Here, the district judge did make this finding, and there is no indication that this finding was clearly erroneous. The only direct attack on the validity of the finding is made by Thompson, who argues that commentary notes to U.S.S.G. § 2D1.4, clearly meant to apply to drug sales, indicate that an amount should not be used for sentencing if the guilty party "did not intend to produce and was not reasonably capable of producing the negotiated amounts...." Although Thompson contends that the defendants could not afford to buy one kilogram and only intended to buy three ounces, the district judge had sufficient information before him that his finding was not clearly erroneous. In particular, the defendants' explicit agreement to purchase one kilogram and their arriving at the scene with financial documents indicating the financial ability to do so supports his determination.
 
 III
 
 14
 Stitt raises three other specific objections to the court's Guidelines determination:
 
 He contends:
 
 15
 (1) that he should have received a two level reduction for acceptance of responsibility (U.S.S.G. § 3E1.1);
 
 
 16
 (2) that he should have received a reduction based on the victim's conduct (U.S.S.G. § 5K2.10); and,
 
 
 17
 (3) that the district court erroneously believed that there was "little room for a sentence below the guidelines...."
 
 
 18
 Each of these contentions is without merit.
 
 
 19
 Stitt contends that he accepted responsibility because he admitted performing the specific acts and statements testified to by government witnesses. However, he contended that he had no criminal liability as charged in the indictment because (1) he did not intend to distribute the cocaine, which was to be for his own personal use; and (2) that he was entrapped.
 
 
 20
 Acceptance of responsibility as intended by Guideline section 3E1.1 entails an acceptance of responsibility for one's criminal conduct, not merely an absence of disagreement with the government's testimony. Here, the district court was not clearly erroneous in determining that a specific effort to avoid criminal liability by the two defenses mentioned precluded an acceptance of responsibility. United States v. Christoph, 904 F.2d 1036, 1041 (6th Cir.1990), cert. denied, 111 S.Ct. 713 (1991).
 
 
 21
 Stitt's second argument is particularly ingenious. Obviously, in any type of "sting" operation the deceit involved in the government's activities will, in some sense, have provoked the crime. However, what happened here was provocation only in the sense that banks and stores provoke robbery by containing valuables, or that a victim provokes assault by being in the same place as the assailant. It is not the kind of "provocation and harassment" that might serve to mitigate a sentence for a crime committed in retaliation. See United States v. Sanchez, 917 F.2d 607, 614 (1st Cir.1990), cert. denied, 111 S.Ct. 1625 (1991). There are no reported cases indicating that the collective conduct of the government can ever qualify as the conduct of a victim under this circumstance. While such conduct may conceivably constitute a defense to the crime itself ( United States v. Russell, 411 U.S. 423 (1973); United States v. Twigg, 588 F.2d 373, 380-81 (3d Cir.1978); United States v. West, 511 F.2d 1083 (3d Cir.1975)), such activity is not a factor in reducing a sentence under this section.
 
 
 22
 Finally, given that a five-year mandatory minimum sentence was appropriate for the purchase of more than 500 grams of cocaine as determined earlier in this opinion, the court and the probation officer were simply stating the truth, that there was very little room for a downward departure between the 60-month mandatory minimum and the 63-month bottom of the sentencing range, to which the defendant was actually sentenced. The court committed no error in receiving and understanding that statement. There is no indication that the judge was in any way misled or acting contrary to law when he refused to depart downward into the three-month remaining permissible range. See United States v. Draper, 888 F.2d 1100 (6th Cir.1989); United States v. Sanchez, 917 F.2d 607, 613 (1st Cir.1990) (on jurisdiction over failures to depart downward.)
 
 IV
 
 23
 The defendants objected to the admission of the contents of the April 5 and April 10 taped telephone conversations between Thompson and the detective. Thompson claimed that the April 5 and 10 conversations occurred before the formation of the conspiracy, were more prejudicial than probative, and should not have been admitted. He claimed that the conversations showed evidence of prior bad acts and that because he was willing to stipulate to prior drug transactions, the Government did not need the summaries as evidence of criminal predisposition under Federal Rule of Evidence 404(b). Stitt claimed the conversations were hearsay as to him because they occurred prior to the conspiracy and therefore did not fit the exclusion from the hearsay definition of statements "by a co-conspirator of a party during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E). The Government sought the admission of the taped conversations as part of the conspiracy. The Government argued that the conspiracy charged included the negotiations that occurred prior to the specific agreement to buy the cocaine and that the conversations showed a conspiracy between Thompson and Stitt to obtain controlled substances. As allowed under Bourjaily v. United States, 483 U.S. 171 (1987), the district court considered the evidence provided by the tapes as well as other evidence in finding the preliminary facts necessary to a Rule 801(d)(2)(E) admissibility determination. The district court then found that it was more likely than not that Stitt and Thompson had formed a conspiracy and that the conversations prior to April 17 were admissible as made during and in furtherance of the conspiracy. See Bourjaily, 483 U.S. at 175 (setting out preliminary facts that must be established for testimony to be admissible under Rule 801(d)(2)(E)).
 
 
 24
 We find no error in the admission of the evidence in question. A conspiracy is an agreement to do an illegal act, a criminal contract. Even if the specific agreement to buy the cocaine was not made prior to April 17th, the conversations prior to that date formed part of the negotiations for this criminal contract and would be admissible to show the transactions leading to the formation of the contract.
 
 V
 
 25
 For the reasons given above we affirm the convictions and sentences of both Thompson and Stitt.
 
 
 26
 MERRITT, Chief Judge, concurring and dissenting.
 
 
 27
 I concur in the majority's opinion insofar as it affirms the defendants' convictions. I dissent from the panel's disposition of the sentencing issue. The record before us suggests that the District Court did not make an independent finding of fact as to the quantity of cocaine involved in this case. Instead, the District Court appears to have believed the jury made a finding that the offense involved one kilogram and then felt bound by that finding in sentencing. Because it is the task of the court to find, as a sentencing fact, the quantity of drugs involved in an offense, I would remand to the District Court for an independent finding of the quantity of cocaine involved in this offense and for re-sentencing in light of that finding.
 
 
 28
 As the majority acknowledges, the record shows that the District Court instructed the jury that it could find the defendants guilty of an offense involving one kilogram of cocaine or of an offense involving three ounces of cocaine, a lesser included offense. This instruction suggests that drug quantity is an element of the offense under 21 U.S.C. § 841, and thus under § 846, rather than a sentencing fact, and leaves the question of quantity for the jury. Under the law of this circuit the question of drug quantity is not left to the jury. The jury finds liability for the offense in cases such as this, but the court must find the sentencing facts, among them the quantity of the drug at issue in the offense. See United States v. Moreno, 899 F.2d 465, 471-74 (6th Cir.1990).
 
 
 29
 The record also indicates that the District Court believed the jury had found one kilogram to be the drug quantity involved in the offense. It is not clear, however, that the jury found a one-kilogram quantity. The Government argued to the jury that it could convict on the intent to distribute element of the offense even if it thought the defendants intended to buy only three ounces of cocaine. The Government presented extensive testimony to show how three ounces could be cut and made into a quite sellable quantity. The jury made no specific finding as to quantity of drugs.
 
 
 30
 Finally, the record suggests that, having left the question of quantity to the jury in its charge, the District Court then felt bound by what it considered the jury to have found rather than recognizing that it is the court's task to find the quantity as a sentencing fact. Although acknowledging that it could reduce the sentence to one that it considered "the right kind of sentence" for the defendants "by just a finding that this wasn't a one-kilo deal but three or four ounces," the District Court said, "I cannot say from the bench here that the jury's verdict--I think by their verdict they said even though they didn't make a specific finding, I think they said by their verdict that you all intended to do a one-kilo deal. If they found beyond a reasonable doubt or disbelieved that you were in a kilo, they could have found you guilty of a lesser offense.... [T]he jury has spoken." The Court then went on to address the defendants: "[B]ased upon the jury's verdict of guilty, the Court ... remands you to the custody of the United States Attorney General for a period of 63 months."
 
 
 31
 Some parts of the record also suggest that the District Court would have made the same finding as it believed the jury had made. "And, of course, I have--even laying the jury's verdict aside I have no problem at all ... in finding a clear, not only a preponderance but overwhelming weight of the evidence that clear and convincing that this was intended to be a one-kilo buy." Other parts of the record suggest that the Court would have found the lesser amount. The Court seemed especially concerned about overreaching on the part of the Government, overreaching that did not rise to the level of entrapment as to the intent to buy but did change the drug transaction from a three-ounce deal to a one-kilogram deal. The Court said, "But if this was your first time and you got caught, that is awful bad luck, especially when you got talked into doing one kilo of cocaine." The Court also indicated that its discretion in sentencing was extremely limited. "[R]eally I have little power in doing what I might personally think would be the right kind of sentence. The sentencing commission has sort of locked district judges in to a certain extent."
 
 
 32
 The quantity of a drug goes to the level of punishment meted out under the Guidelines and thus has serious consequences. Someone has to accept responsibility for finding the quantity of drug involved in the offense and make that specific finding. Otherwise each actor in the process may avoid the responsibility or shift it. This case may illustrate the problem wherein everyone believes someone else is responsible for the task and so no one actually makes the very important finding as to drug quantity. It is possible, given the absence of a specific jury finding as to quantity, that the jury in this case accepted the Government's argument that it need not address quantity and found the defendants guilty of conspiracy to possess with intent to distribute cocaine without regard to quantity. Then the Court, because it charged in terms of one drug amount with a lesser included offense for a lesser amount, believed the jury found the one-kilogram quantity and felt bound by a finding the jury did not in fact make. It is thus possible that no one made a finding as to drug quantity in this case except the probation officer in the presentence report.
 
 
 33
 Because it is not clear that the District Court made an independent finding, the case should be remanded so that the District Court may make the finding and so that the defendants may be re-sentenced in light of that finding.
 
 
 
 *
 The Honorable Thomas G. Hull, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation