986 F.2d 1423
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Defendant-Appellant,
v.
Robert Franklin RILEY, Plaintiff-Appellee.
 No. 92-5201.
 United States Court of Appeals, Sixth Circuit.
 Feb. 3, 1993.
 
 Before KEITH, DAVID A. NELSON and RYAN, Circuit Judges.
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 Defendant Robert Riley here appeals a criminal sentence imposed after he pleaded guilty to a federal charge of conspiracy to transport and sell stolen motor vehicles in interstate commerce. The district court increased the defendant's offense level under the sentencing guidelines on the basis of findings of "more than minimal planning" (U.S.S.G. § 2B1.1(b)(5))[1] and an "organized scheme to steal vehicles" (U.S.S.G. § 2B1.1(b)(6)). The central issue on appeal is whether these findings are clearly erroneous. Concluding that they are not, we shall affirm the sentence.
 
 
 2
 * Defendant Riley, a man in his mid-30s, has a record of more than 50 arrests. Prior to the entry of his guilty plea in the present case, Mr. Riley had been convicted of disorderly conduct, assault, criminal damaging, discharging firearms, forgery, attempted carrying of a concealed weapon, and theft, among other things. In 1976, at the age of 18, he pleaded guilty in an Ohio common pleas court to a charge of perjury.
 
 
 3
 In November of 1990 one Leonard Mehl, an acquaintance of defendant Riley, stole a 1987 Honda Accord automobile in Columbus, Ohio, and drove it to the town where Mr. Riley lived. Mehl told Riley that the car was stolen, and indicated that he was thinking of abandoning it. The automobile had a fair market value in excess of $6500, and Mr. Riley suggested selling it. Riley telephoned a cousin in Kentucky, a man named Randy McPherson, and arranged a sale to him. Mehl and Riley then drove the car to Kentucky and left it with Mr. McPherson. They told McPherson at this time that they had access to many stolen cars. McPherson was not to pay for the Honda Accord until later, and the probation officer who subsequently investigated the matter concluded that Riley and Mehl cooked up a story about additional stolen cars simply to get a better price for the Honda.
 
 
 4
 Mr. McPherson contacted law enforcement authorities after the Honda had been left with him, and he agreed to cooperate in investigating a potential stolen car ring. Mr. Riley placed several telephone calls to Mr. McPherson over the course of the next couple of weeks, and these calls were tape-recorded. In the course of the conversations Riley again represented that he could provide additional stolen cars.
 
 
 5
 As arranged over the telephone, Messrs. Riley and Mehl met with McPherson in Ironton, Ohio in December of 1990 to collect $200 for the stolen Honda and discuss delivery of additional stolen vehicles. The December meeting was attended by an undercover FBI agent named Danzer, who pretended to be a potential buyer. At this meeting Mehl reiterated Riley's offer of additional stolen cars, referring specifically to two Chrysler automobiles that had the steering columns "busted out." Agent Danzer agreed to accept the stolen vehicles, but the authorities never found them.
 
 
 6
 A federal grand jury sitting in the Eastern District of Kentucky indicted Riley and Mehl in March of 1991. Mr. Mehl's case was subsequently transferred to the Southern District of Ohio, where Mehl pleaded guilty and agreed to testify against Riley. Based on Mehl's substantial assistance, the government moved under U.S.S.G. § 5K1.1 for a downward departure in his sentence. Mr. Mehl was ultimately sentenced to imprisonment for 10 months.
 
 
 7
 Mr. Riley's arraignment was delayed until he had finished serving a six-month sentence on an unrelated state weapons charge, but he was finally arraigned in September of 1991. At that time he entered a plea of not guilty.
 
 
 8
 On November 4, 1991, following successful negotiation of a plea bargain, Mr. Riley appeared before Judge Wilhoit, of the United States District Court for the Eastern District of Kentucky, for rearraignment. Count 1 of the indictment was read aloud to Riley at that time. This count, which charged him with participation in a conspiracy pursuant to which motor vehicles would be stolen and transported in interstate commerce, cited four overt acts committed in furtherance of the conspiracy. The count concluded with this description of the fourth overt act:
 
 
 9
 "No. 4, on or about December 11th, 1990 Robert Franklin Riley and Leonard Michael Mehl, also known as Cecil, at Ironton, Ohio accepted $200 from FBI [Special Agent] Gary J. Dan Danzer then posing as Randall McPherson's cousin as payment for the stolen 1987 Honda Accord. Riley and Mehl further offered to transport to Kentucky and sell to Danzer additional stolen vehicles in violation of Title 18, United States Code, Section 371." (Emphasis supplied.)
 
 
 10
 Immediately after the reading of this paragraph, Mr. Riley was asked how he pleaded. "Guilty," he said.
 
 
 11
 Mr. Riley was then placed under oath and questioned by the court. Riley stated, among other things, that he had had an ample opportunity to discuss the case with his lawyer and was satisfied with the lawyer's representation of him. He acknowledged that he had heard the reading of Count 1 of the indictment, and said that he understood the nature of the charges contained therein. He also said that he understood that the penalty would be solely up to the court.
 
 
 12
 Mr. Riley was informed that the estimated guideline sentencing range would be imprisonment for a minimum term of 30 months and a maximum of 37 months.[2] It was reiterated that under the plea agreement the government was to make no recommendation as to the sentence, and Mr. Riley said that this comported with his understanding of the agreement.
 
 
 13
 Mr. Riley told Judge Wilhoit that there was no reason at all for him to enter the guilty plea other than his being guilty. He admitted knowing that the Honda Accord had been stolen, and he admitted that he had been present when it was sold. At the court's request, the Assistant United States Attorney, Mr. Zerhusen, went on to state his understanding of the facts. Mr. Zerhusen said, among other things, that it was defendant Riley who suggested selling the car rather than dumping it; that it was Riley who identified McPherson as a potential buyer and sold the car to him; that Riley and Mehl had both transported the stolen vehicle across state lines to deliver the car to McPherson; that "[i]n addition to the sale of this vehicle, representations were made by the defendant and by Mr. Mehl that there were additional vehicles that could be sold;" and that the defendant subsequently "represented again that he had additional vehicles that could be provided." Mr. Riley acknowledged in open court that all this was true.
 
 
 14
 After accepting the plea, the court asked probation officer William Hawk to prepare a presentence report. Mr. Hawk did so. The presentence report concluded, among other things, that Mr. Riley had a total of 22 criminal history points;[3] that the base offense level prescribed by U.S.S.G. § 2B1.1(a) for theft--level 4--should be increased four levels because the loss was more than $5,000 and less than $10,000; that Mr. Riley should receive a two level reduction under U.S.S.G. § 3E1.1(a) for acceptance of responsibility; that there should not be a two level increase under U.S.S.G. § 2B1.1(5) for "more than minimal planning;" and that U.S.S.G. § 2B1.1(6) was inapplicable.[4]
 
 
 15
 Under the total offense level recommended by the probation officer, the guideline range prescribed by the sentencing table would be imprisonment for 12-18 months. If U.S.S.G. § 2B1.1(6) is applied, however, and if a two level reduction is then granted for acceptance of responsibility, the guideline range prescribed by the sentencing table increases to 30-37 months.
 
 
 16
 The United States filed written objections to the presentence report, suggesting, among other things, that the offense involved both more than minimal planning and an organized scheme to steal vehicles. In a subsequent addendum to the presentence report, the probation officer acknowledged that his preliminary guideline estimate had included the use of a two level increase for more than minimal planning. Further investigation, however, had led the probation officer to believe that "this [was] more of an opportunistic type of crime." The addendum to his report went on to say that the "organized scheme" increase had also been included in the original estimate. Although "[t]here is a reasonable argument for this being a scheme to steal vehicles," the addendum said, the probation officer had ultimately concluded that there was no such scheme and no "ongoing, sophisticated operation."
 
 
 17
 Judge Wilhoit conducted a sentencing hearing on January 24, 1992, at which time Assistant United States Attorney Zerhusen explained his objections to the presentence report. Counsel for defendant Riley explained why he thought the report was correct. The district court, after noting that defendant Riley had pleaded guilty in the belief that his guideline range would be 30 to 37 months, made an on-the-record finding "that not only was there more than minimal planning but this was an ongoing scheme...." The court observed that "the public was fortunate that the authorities were able to uncover and get it stopped."
 
 
 18
 Granting Mr. Riley a two level reduction in his offense level for acceptance of responsibility, and imposing a sentence at the bottom of the guideline range as calculated by the court, the judge sentenced Mr. Riley to imprisonment for a period of 30 months. Judge Wilhoit described Mr. Riley as "a professional criminal" who had been dealt with leniently in the past, and he said that Mr. Riley's lengthy string of offenses was something "that has got to stop," and that the court could and would stop it for at least a little while.
 
 
 19
 This appeal followed.
 
 II
 
 20
 In reviewing Mr. Riley's sentence, we are bound by the following language in 18 U.S.C. § 3742(e):
 
 
 21
 "The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts."
 
 
 22
 We must thus accept Judge Wilhoit's factual findings unless they are clearly erroneous, and we must give due deference to his application of the guidelines to the facts. See United States v. Christoph, 904 F.2d 1036, 1039 (6th Cir.1990), cert. denied, 111 S.Ct. 713 (1991).
 
 
 23
 A finding of fact is deemed clearly erroneous when, after consideration of the entirety of the evidence, the reviewing court is left with a definite and firm conviction that a mistake has been made. United States v. Perez, 871 F.2d 45, 48 (6th Cir.), cert. denied, 492 U.S. 910 (1989). The record in this case leaves us with no such definite and firm conviction.
 
 
 24
 The record manifestly supports the enhancement for "more than minimal planning" under § 2B1.1(b)(5). Although Mr. Riley was not a participant in the actual theft of the Honda Accord, he was the prime mover in developing the scheme to sell the stolen car. It was he who found a buyer, set up the deal, helped transport the car across state lines, and arranged a payoff meeting which he himself attended. We cannot say the district court committed clear error in finding that all this involved more than minimal planning.[5]
 
 
 25
 The finding that Mr. Riley's offense "involved an organized scheme to steal vehicles" presents a much closer question. It is undisputed that Mr. Riley repeatedly told Randy McPherson that he could provide more stolen vehicles. Riley was able to convince the probation officer that this was mere "puffing." Judge Wilhoit, however, like the probation officer, had observed Mr. Riley first hand and had full knowledge of a criminal record that included a conviction for perjury. As the court pointed out, the defendant's record included convictions for "disorderly conduct, perjury, criminal damaging, aggravated menacing, destruction of property, vandalism, resisting arrest, discharging firearms, leaving the scene of an accident, and other intoxication and motor vehicle charges, forgery * * * criminal trespassing and grand theft; receiving stolen property, fourth degree; bad check down at Winchester, Kentucky; theft of property, second degree, in Alabama; resisting arrest in Mississippi; theft in Ironton, Ohio, three or four of those theft charges over in Ironton; aggravated burglary...."
 
 
 26
 Against this background, Judge Wilhoit chose to believe that Mr. Riley's latest offense did, in fact, involve an organized scheme to steal vehicles, just as Riley's unguarded statements to McPherson suggested it did. We might not have reached this conclusion ourselves, but we are not prepared to say that it was clearly erroneous. And as far as the purposes of the Sentencing Reform Act are concerned (see 18 U.S.C. § 3553(a)(2)), it seems to us that a 30 month sentence--the minimum sentence that Mr. Riley could reasonably have been expecting at the time he pleaded guilty to the charge of participating in a conspiracy under which "motor vehicles would be stolen"--was eminently fair and just.
 
 
 27
 AFFIRMED.
 
 
 28
 KEITH, Circuit Judge, dissenting.
 
 
 29
 Because I disagree with the majority's conclusion that the district court did not commit clear error in concluding that Riley's offense involved an organized scheme to steal vehicles, I must respectfully dissent.
 
 
 30
 The majority states "we might not have reached this conclusion ourselves, but we are not prepared to say that it was clearly erroneous."[1] However, a careful examination of the evidence presented at trial does not support the district court's conclusion that there was an organized scheme to steal vehicles. In the addendum to the presentence report, the probation officer stated that his original finding that Riley was involved in an organized scheme to steal vehicles was in error.
 
 
 31
 In support of his decision that an organized scheme existed, Judge Wilhoit read aloud Riley's lengthy criminal record, apparently to show that anyone with such sordid past must have been a part of an organized scheme. However, an extensive criminal record in the absence of any evidence of the existence of an organized scheme, is simply not enough to support such a finding. Affirming the district court's inference that Riley was involved in an organized scheme to steal vehicles flies in the face of criminal justice. Therefore, I would REVERSE and REMAND this case to the district court for resentencing.
 
 
 
 [1]
 Mr. Riley's brief refers to U.S.S.G. § 2B1.1(b)(4) in connection with the "more than minimal planning" question, not U.S.S.G. § 2B1.1(b)(5). The former subsection refers to the taking of undelivered United States mail, and the latter to commission of an offense involving more than minimal planning. We assume that the brief's reference to § 2B1.1(b)(4) is simply a typographical error
 
 
 [2]
 The maximum sentence that could be imposed under 18 U.S.C. §§ 2312 and 2313, the sections that Mr. Riley was charged with violating, would have been 60 months
 
 
 [3]
 A defendant with 13 or more criminal history points is placed in Criminal History Category VI (the highest category) for purposes of applying the sentencing table set forth in the guidelines
 4 U.S.S.G. § 2B1.1(6) reads as follows:
 "If the offense involved an organized scheme to steal vehicles or vehicle parts, and the offense level as determined above is less than level 14, increase to level 14."
 Application Note 8, in the Commentary that follows this section of the guidelines, reads as follows:
 "Subsection (b)(6), referring to an 'organized scheme to steal vehicles or vehicle parts,' provides an alternative minimum measure of loss in the case of an ongoing, sophisticated operation such as an auto theft ring or 'chop shop.' * * *"
 
 
 [5]
 Standing alone, a two-level enhancement for more than minimal planning, offset by the reduction for acceptance of responsibility, would have brought this defendant's guideline sentence range to 18-24 months. If the court had not found an organized scheme to steal vehicles, therefore, the maximum term to which Mr. Riley could have been sentenced without a departure from the guideline range would have been six months shorter than the sentence actually imposed
 
 
 [1]
 In this quoted passage, the majority is referring to the district court's conclusion that there was an organized scheme to steal vehicles