14 F.3d 603
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Morris Lee POPE a/k/a Maurice Pope, Defendant-Appellant.
 No. 91-80532.
 United States Court of Appeals, Sixth Circuit.
 Jan. 13, 1994.
 
 Before: NELSON and BATCHELDER, Circuit Judges and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is defendant-appellant's second time before this court appealing the district court's upward departure from the United States Sentencing Guidelines ("USSG" or "Guidelines") for his conviction for bank fraud under 18 U.S.C. Sec. 1344.[1] In our prior, unpublished opinion, this Court upheld Pope's conviction for bank fraud, but vacated his sentence and remanded the case to the district court.
 
 
 2
 In Pope's first sentencing, the district court, pursuant to the government's request, upwardly departed 30 months from a guideline range of 24-30 months, for a total sentence of 60 months. The district court did so for the stated reason that Pope's criminal history rating significantly underrepresented the seriousness of his criminal history or the likelihood that he would commit other crimes. However, upon review of the record, this Court found that the district court failed to comply with the mandate of United States v. Kennedy, 893 F.2d 825, 829 (6th Cir.1990), in which we held that if the district court departs upward more than one criminal history category, the court must first look to the next higher criminal history category. Specifically, we found, "the district court failed to articulate, on the record, specific reasons why it found the next higher criminal history category ... inadequate," and we remanded the case to the district court for a second sentencing.
 
 
 3
 On January 28, 1993, the district court again sentenced Pope to 60 months imprisonment, extrapolating a hypothetical criminal history category of XVI, and giving its reasons for the upward departure on the record and in a written order. Pope appeals his sentence, again asserting that the district court erred in upwardly departing under the sentencing guidelines. We disagree and affirm.
 
 I.
 A.
 
 4
 A district court should impose a sentence within the guideline range "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." 18 U.S.C. Sec. 3553(b).
 
 
 5
 The Sentencing Commission has recognized that a defendant's criminal history category is not always an accurate reflection of his true criminal background or his propensity to commit more crimes. The Commission included Sec. 4A1.3, "Adequacy of Criminal History Category," as a policy statement on this issue: "If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guidelines."
 
 
 6
 In United States v. Joan, 883 F.2d 491 (6th Cir.1989), this Court adopted a three-part test for reviewing on appeal the propriety of upward departures. The first inquiry must be whether the district court was correct "in determining that the case is sufficiently 'unusual' to warrant departure." Id. at 494; United States v. Barnes, 910 F.2d 1342, 1345 (6th Cir.1990). Once it is determined that the unusual circumstances found by the district court are "conceptually proper," it must be determined whether they "actually exist" in the particular case. Barnes, 910 F.2d at 1345. Finally, the court must "review the actual departure made against a standard of reasonableness." Id.
 
 
 7
 The first step in the Joan analysis "is a question of law regarding whether the circumstances of the case are sufficiently unusual to justify departure." Joan, 883 F.2d at 494. In this case, defendant had at least thirty-one convictions; for at least twenty-four of these convictions defendant received zero criminal history points. At resentencing, the district court articulated specific reasons why it found the circumstances of this case to be "unusual". The court found, in part:
 
 
 8
 Although Pope received a criminal history classification of V which establishes a presumptive sentence range of twenty-four to thirty months, there are several factors that warrant an upward departure in this case:
 
 
 9
 1. Pope was arrested and convicted on twenty-three occasions between 1965 and 1979. However, he was not assessed any criminal history points by this Court for his unlawful activity because of the respective and collective antiquity of these offenses.
 
 
 10
 2. Pope was not assessed an additional three criminal history points by this Court because of the consolidation (for the purpose of sentencing) of his four convictions in 1973 and 1974 by another federal judge.
 
 
 11
 3. At the time of the original sentence date, Pope had a criminal charge pending against him relating to his alleged failure to comply with a previously entered judgment by a state court.
 
 
 12
 4. Three separate complaints against Pope were dismissed by a United States magistrate judge upon a recommendation of the United States Attorney who sought additional time in order to investigate the alleged criminal offenses. "According to the United States Attorney's Office [these three cases] have not been dismissed internally with the United States Attorney's Office and are potentially prosecution cases [against Pope]." Presentence Report Par. 97, at 15.
 
 
 13
 5. According to the records of the Michigan Secretary of State, Pope's driving record included thirty-three suspensions relating to his failure to (a) appear in court and (b) comply with a series of state court judgments between 1984-1989.
 
 
 14
 These findings satisfy the first prong of the Joan analysis. It is clear from the record in this case that the extraordinary number of Pope's past convictions and his recidivist tendencies constitute circumstances that are sufficiently unusual to warrant a departure as a matter of law.
 
 
 15
 As to the second prong of the Joan analysis, the defendant admitted at the original sentencing that the facts upon which the district court based its upward departure were accurate. This is sufficient to show that they exist in this particular case. Barnes, 910 F.2d at 1345.
 
 
 16
 Finally, this Court has stated that the inquiry into the reasonableness of the departure, the third prong of Joan, " 'involves what is quintessentially a judgment call.' " Barnes, 910 F.2d at 1345. This "judgment call" necessitates a substantial degree of deference to the district court's decision, Joan, 883 F.2d at 494, and this Court " 'will not lightly disturb ... decisions implicating degrees of departure.' " Id. After reviewing the record and the district court's stated reasons for departure, we find no evidence that persuades us the imposed sentence was unreasonable.
 
 B.
 
 17
 The final inquiry is whether the district court complied with the mandate of United States v. Kennedy, 893 F.2d 825 (6th Cir.1990), in which we held that before an upward departure may be made the district court must "first look to the next higher criminal history category" for guidance. Id. at 829. If after looking to the next higher criminal history category the sentencing court elects to impose a sentence above that category, it must demonstrate on the record "either that it first looked to the next higher criminal history category for guidance or that it found the sentence under the next higher criminal history category too lenient." Id. When, as in this case, the district court feels it is necessary to depart upward more than a single level "[w]e examine a court's stated reasons for departure beyond the next higher level 'more closely' " United States v. Lassiter, 929 F.2d 267, 270 (6th Cir.1991).
 
 
 18
 In this case, the district court met the requirements of Kennedy and Lassiter. The court articulated, on the record, its consideration and rejection of the next higher criminal history category:
 
 
 19
 Following a complete review of the official file in this case, as well as the December 29, 1992 decision of the Sixth Circuit, this Court concludes that the sentence which had been imposed upon Pope on November 21, 1991 was justified and reasonable.
 
 
 20
 Furthermore, it is the judgment of this Court that the next higher criminal history category (to wit VI), as well as the succeeding criminal history categories VII through XV, are inadequate for the purpose of sentencing Pope. As a result, none of them can be utilized by this Court to impose the appropriate punishment upon Pope under the circumstances of this case and on the basis of his criminal record.
 
 
 21
 Additionally, the district court provided a framework for taking into consideration Pope's extensive criminal record by extrapolating a criminal history category and stating its reasons for arriving at the level of XVI:
 
 
 22
 If this Court had taken in account (a) the antiquity of Pope's criminal history, (b) the four point maximum assessment under Section 4A1.1(c) and (c) the consolidation of unrelated offenses, he would have been assessed an additional thirty-one criminal history points. These additional criminal history points, when coupled with the twelve points that were assessed against Pope, would have given him a total criminal history score of forty-three points. This modification in the tabulation of Pope's criminal history points would have resulted in an extrapolated criminal history category of XVI.
 
 
 23
 Given the district court's statement that it looked at and rejected the next higher criminal history category, see United States v. Head, 927 F.2d 1361, 1368 (6th Cir.), cert. denied, 112 S.Ct. 144 (1991), and specific statements concerning its reasons for extrapolating a criminal history of XVI, we find that the dictate of Kennedy is met.
 
 
 24
 Looking "more closely" at the district court's reasons for departing upward beyond criminal history category VI, it is clear from the record in this case that the reason for the district court's upward departure was the extraordinary number of uncounted convictions the defendant had amassed. The court's explanation not only provides a breakdown of the number of points which the various uncounted convictions would have provided, but also makes it abundantly clear that the reason that each of the intervening criminal history categories is not appropriate is that the criminal history is simply too extensive; to require the district court to chant the mantra: "I have considered and rejected category VII, I have considered and rejected category VIII, I have considered and rejected category IX," would serve no meaningful purpose. Considering the district court's stated reasons for upward departure, and the record as a whole, we find that the district court did not abuse its discretion by departing upward past criminal history category VI to category XVI.
 
 
 25
 Having thus analyzed the district court's actual approach, we now note that the approach and analysis is no longer valid. The practice of extrapolating along the horizontal (criminal history) axis, while not explicitly authorized by the sentencing guidelines, was accepted methodology until November, 1992, when the Sentencing Commission amended U.S.S.G. Sec. 4A1.3:
 
 
 26
 Where the court determines that the extent and nature of the defendant's criminal history, taken together, are sufficient to warrant an upward departure from Criminal History Category VI, the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case.
 
 
 27
 U.S.S.G. Sec. 4A1.3, p.s. (emphasis added). This Court in United States v. Carr, 5 F.3d 986, 994 (6th Cir.1993), interpreted this policy statement to "require a sentencing court to look to the other [offense level] axis and consider the available ranges from higher offense levels."
 
 
 28
 From a strictly mechanistic standpoint, the sentencing court did not proceed pursuant to the guidelines instruction when resentencing Pope; instead, as noted above, the district court used a process of extrapolation to extend the horizontal axis of the sentencing table beyond Criminal History Category VI. In this particular case, however, we are satisfied that if the sentencing court had moved incrementally down the vertical axis--a column that has nothing to do with criminal history, of course--the end result would have been no different. At offense level 17 the court would have come to a gridblock showing a sentence of 51-63 months, and would have imposed a sentence within that span (sixty months) for reasons that have already been well explained. A sixty month sentence is perfectly reasonable, under the circumstances of this case, and, in our view, such a sentence is fully consistent with the policy judgments reflected in the 1992 version of the guidelines. Nothing would be accomplished by yet another remand.
 
 
 29
 Though it may seem self evident, we think it is prudent to point out that since this circuit has held that the amendment to U.S.S.G. 4A1.3, requires a district court, Carr, 5 F.2d at 994, to look to the offense level axis when it determines that there is reliable information indicating that a defendant's criminal history category does not adequately reflect the seriousness of a defendant's past criminal conduct, the case law, including Kennedy and Lassiter and their progeny, insofar as they deal with moving past criminal history category VI, are no longer applicable.
 
 II.
 
 30
 Pope objects to the utilization of the majority of his past convictions and offenses in this calculus, because, he argues, they are either too old, "not similar", or otherwise improper. We cannot agree.
 
 
 31
 Past convictions such as those of appellant Pope, which are too old to be counted, are examples of "prior sentence(s) not used in computing the criminal history category." U.S.S.G. Sec. 4A1.3(a). Several courts have utilized older, uncounted convictions, for an upward departure, especially if the current crime is similar to the older ones. See e.g., United States v. Notrangelo, 909 F.2d 363 (9th Cir.1990); United States v. Gardner, 905 F.2d 1432 (10th Cir.) cert. denied, 498 U.S. 875 (1990); United States v. Spraggins, 868 F.2d 1541 (11th Cir.1989). Here, the instant offense involves fraudulent or dishonest conduct involving stolen property as do many of the uncounted prior convictions.
 
 
 32
 Courts have also upwardly departed under U.S.S.G. Sec. 4A1.3(a) utilizing older convictions not similar to the crime for which the defendant was being sentenced on the basis that the defendant's counted criminal history was not an accurate indicator of the defendant's propensity to commit crimes. See, e.g., United States v. Gammon, 961 F.2d 103, 107-09 (7th Cir.1992) (affirming upward criminal history departure based on numerous convictions more than fifteen years old); United States v. Webb, 950 F.2d 226 (5th Cir.1991) (upholding five year criminal history departure based on numerous convictions more than fifteen years old), cert. denied, 112 S.Ct. 2316 (1992); United States v. Andrews, 948 F.2d 448 (8th Cir.1991) (upholding sentence double that of applicable guideline range based upon upward departure due to three unrelated old convictions); United States v. Carey, 898 F.2d 642, 645-47 (8th Cir.1990) (upward departure on basis of old nonsimilar convictions permitted because "seriousness of appellant's prior criminal history and his incorrigibility were not adequately reflected in his criminal history category or other guidelines").
 
 
 33
 Pope's prior convictions, even those that are not "similar", were properly considered because such a large number of convictions demonstrates "reliable information" under U.S.S.G. Sec. 4A1.3 of Pope's serious criminality, antisocial behavior, and recidivous tendencies. As recognized by the district court, Pope's "penchant for crime as evidenced by his prior history of recidivism is a circumstance not adequately taken into account in determining his criminal history category." See United States v. Bennett, 975 F.2d 305, 308-10 (6th Cir.1992) (allowing upward departure under U.S.S.G. Sec. 4A1.3 for "unusually high likelihood of recidivism"); United States v. Christoph, 904 F.2d 1036, 1042 (6th Cir.1990) (affirming an upward departure premised upon the "defendant's very lengthy criminal record and his propensity to commit future crimes"), cert. denied, 498 U.S. 1041 (1991).
 
 
 34
 The district court also properly identified Pope's propensity to commit future crimes as a basis for an upward departure. At Pope's original sentencing, the district court pointed out that Pope's "chronic," "antisocial," and "habitual" tendencies are indicative of a person who does not have the "ability" or "requisite motivation or even attitude to improve."
 
 
 35
 It is also clear from a review of Pope's prior uncounted criminal convictions that he received concurrent sentences for multiple convictions on at least four occasions. In at least one instance, the uncounted convictions would have been counted in his criminal history had they not been consolidated for sentencing; this Court has affirmed upward departures under these circumstances. See United States v. Gonzales, 929 F.2d 213, 217-220 (6th Cir.1991) (affirming an departure due to consolidation of separate convictions for sentencing); United States v. Medved, 905 F.2d 935 (6th Cir.1990) (upward departure affirmed where prior consolidation of defendant's convictions prevented application of career offender provisions), cert. denied, 498 U.S. 1101 (1991). Given Pope's lengthy criminal history, consolidation of convictions for purposes of sentencing results in a criminal history category not reflective of the seriousness of Pope's criminal history or the frequency with which he has committed crimes. As a result, the district court properly used this as a stated factor for an upward departure.
 
 
 36
 Pope also asserts that the district court erred by improperly considering the three complaints against him which had been dismissed by the magistrate judge but not dismissed internally by the U.S. Attorney's Office. Even if this was an improper basis for an upward departure, this Court may nonetheless affirm Pope's sentence because the departure is sufficiently supported by numerous other factors. See Williams v. United States, 112 S.Ct. 1112, 1120-21 (1992) (reviewing court may affirm a sentence in which a district court's departure decision is based upon both proper and improper factors); United States v. Christoph, 904 F.2d 1036 (6th Cir.1990) (departure upheld even though some factors cited by judge improper), cert. denied, 498 U.S. 1041 (1991).
 
 
 37
 We conclude that the district court has satisfied the dictates of both Joan and Kennedy. The district court pointed out Pope's "antisocial" behavior and recidivous tendencies, offered as evidence the high number of Pope's uncounted criminal convictions and other facts from the Presentence Report, and then indicated how, had specific uncounted convictions been counted, Pope would have been in an imprisonment range of 57-63 months. For all of these reasons the district court also found the intervening criminal history categories of VII through XV not adequate for purposes of sentencing Pope.
 
 III.
 
 38
 The sentence imposed by the district court is AFFIRMED.
 
 
 
 [1]
 The underlying facts of this appeal are simple. On September 19, 1989, Pope accompanied a woman to a branch of the National Bank of Detroit ("NBD"), where he was a known customer. Pope represented the woman as his niece, "Elaine Burton," and stated that he wished to open a savings account for her. An account was opened for $25 in the name of Elaine Burton. On September 20, 1989, "Elaine" and Pope deposited into the account a stolen insurance check in the amount of $3600.50. On or about September 27, 1989, a withdrawal of around $2500 was made from the account. $1500 of this amount was in the form of a cashier's check to Pope, who endorsed and negotiated the cashier's check at NBD the same day