UNITED STATES of America, Appellee,

v.

Walter Dennis THOMAS, also known as Dennis Thomas, Defendant–Appellant.

No. 1169, Docket 92–1692.

United States Court of Appeals, Second Circuit.

Argued March 12, 1993.

Decided Oct. 8, 1993.

Harold J. Pokel, New York City, for defendant-appellant.

Judith S. Lieb, Asst. U.S. Atty., E.D.N.Y., Brooklyn, NY (Susan Corkery, Asst. U.S. Atty., Mary Jo White, U.S. Atty., E.D.N.Y., of counsel), for appellee.

Before KEARSE, CARDAMONE, Circuit Judges, and METZNER, District Judge.[*]

CARDAMONE, Circuit Judge:

Walter Dennis Thomas appeals from a sentence imposed on him on October 14, 1992 in the United States District Court for the Eastern District of New York (Glasser, J.). The sole issue on appeal is the propriety of the district court's upward departure from the United States Sentencing Guidelines. In considering the defendant's conduct, the sentencing court found that his criminal history category under the guidelines did not adequately reflect his criminal past. Thomas' criminal background included an extensive array of convictions, arrests, and bench warrants spanning more than 20 years. The extent of appellant's prior conduct already placed him in criminal history category VI, the highest criminal history category available under the guidelines. Yet many of his previous brushes with the law had not been counted in computing his criminal history points and category. Hence, the district court departed upwardly from the guidelines

range so that appellant's sentence would more closely reflect his prior criminality. Since no higher criminal history category existed to guide the sentencing court's departure, it selected what it determined—given the defendant's history—would be an appropriate sentence.

In addition to challenging the sentencing court's authority to impose a sentence above the category VI range, Thomas attacks the court's methodology in upwardly departing saying that each intermediate lower level departure should have been looked at and eliminated on the record before the final sentence was determined. That is, appellant would have the sentencing judge say, "I have considered 12 months, 18 months, 24 months, etc. and find none of them reasonably appropriate as a sentence in light of defendant's criminal history." The approach Thomas urges we adopt is epitomized by the answers given Hamlet when he asks a gravedigger for what man the grave is being dug—"For no man," "For what woman then?" "For none, neither." "Well who is to be buried?" asks Hamlet, and the gravedigger in triumph tells him: "One that *was* a woman." W. Shakespeare, *Hamlet* Act V, Scene I. (Craig ed. 1928). To arrive at a reasonable sentence when an upward departure is justified, the fair administration of our criminal law requires from judges no such false exactitude.

## BACKGROUND

Appellant Thomas was arrested in the early morning hours of September 6, 1991 when he was discovered throwing a bag containing letters into a dumpster. The dumpster was located not far from a mailbox that had been broken into. When stopped by police, Thomas possessed several money orders in his pockets and a pair of pliers. He eventually admitted to a postal inspector that he had broken into and stolen mail from a mailbox. A grand jury later indicted Thomas for one count of possessing stolen mail in violation of 18 U.S.C. § 1708 (1988), and he plead guilty to the charge on November 6, 1991.

[*] Hon. Charles M. Metzner, United States District Court for the Southern District of New York, sitting by designation.

The Probation Department's presentence report calculated Thomas' criminal history points at 17, generating a criminal history category of VI under the sentencing guidelines. Criminal history category VI covers any defendant with 13 or more points and is the highest category available under the guidelines. In conjunction with an offense level of eight, the resulting guidelines range—and the one recommended by the Probation Department—was 18–24 months. The offense level of eight included a two-point upward adjustment for obstruction of justice based on inconsistent statements Thomas made to the court and probation officers in which he claimed he had only found, but not stolen, the mail.

The Probation Department suggested to the sentencing court that it could upwardly depart under U.S.S.G. § 4A1.3 from the recommended guidelines range due to Thomas' extensive criminal history, particularly since many of his convictions were not counted in determining his criminal history category. Thomas' attorney disputed the availability of such a departure in a February 12, 1992 letter in which he posited that his client's wide-ranging criminal history involved only minor offenses and outdated crimes and that the 17 criminal history points fit squarely within category VI.

At sentencing the district judge recited in some detail Thomas' extensive criminal history, which included numerous offenses over 20 years ranging from drug charges to sexual misconduct to larceny. Although the district court found Thomas' criminal past "mind boggling," it did grant a two-level reduction in Thomas' offense level for his acceptance of responsibility, reducing the Probation Department's recommended sentencing range of 18–24 months to 12–18 months. It is from that lower range that Judge Glasser upwardly departed.

On March 10, 1992 after announcing its reasons for upwardly departing, the district court sentenced Thomas to 36 months imprisonment. It explained, in departing, that Thomas' criminal history category did not adequately reflect the seriousness of defendant's previous misconduct and that many prior offenses had not been counted in the criminal history category. Each of Thomas' offenses was enumerated beginning with a May 3, 1970 criminal trespass conviction; 20 convictions and arrests over approximately two decades were recited. Eight of the convictions as well as other arrests not resulting in convictions, had not been counted. These convictions were not included due to their remoteness in time.

The sentencing court further considered that Thomas committed the current offense not only while out on bail on pending charges, but also while he was on probation from a January 8, 1990 sentence for grand larceny. Three local cases were pending at the time of sentencing against appellant, each of which was committed while he was on bail; two of those involved tampering with or breaking into mailboxes. At least four bench warrants against Thomas remained outstanding. The district court thus had before it the fact that Thomas' criminal past was lengthy, continuous, and ongoing.

Defendant successfully appealed his sentence to this Court on the grounds that he had never been addressed personally, nor had he been provided with an opportunity to speak to the court before sentence was imposed, as is required under Fed.R.Crim.P. 32(a)(1)(C). In an unpublished order filed August 12, 1992 a prior panel vacated his sentence and remanded for resentencing. At the brief, directed resentencing hearing, Thomas spoke a few words, none of which persuaded Judge Glasser to change his mind. Telling Thomas that his record was "almost as long as the Pennsylvania Railroad Track," the sentencing court then reaffirmed the earlier sentence it had imposed due to Thomas' past criminal record. Thomas appeals from his sentence once again, this time arguing that the district court erred in upwardly departing under U.S.S.G. § 4A1.3. We affirm.

## DISCUSSION

We think the district court properly granted an upward departure under U.S.S.G. § 4A1.3. That provision of the guidelines permits a sentencing court to depart upwardly when the applicable criminal history cate-

gory does not adequately reflect the seriousness of a defendant's criminal past or the real danger of recidivist behavior. Section 4A1.3 states, as it did at the time Thomas was sentenced,

> If reliable information indicates that the criminal history category does not adequately reflect *the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes,* the court may consider imposing a sentence departing from the otherwise applicable guideline range.

U.S.S.G. § 4A1.3 (emphasis added). The section specifies that information considered may include, among other matters, "prior similar adult criminal conduct not resulting in a criminal conviction." *Id.* § 4A1.3(e). As noted, Judge Glasser listed Thomas' extensive record that included numerous offenses, many of which were not taken into account in setting his criminal history category, the volume and persistency of which strongly suggested a likelihood of defendant continuing his criminal ways.

### I  Upward Departure in this Case

■ Appellant initially contends that where a defendant's prior criminal record already brings him into the highest criminal history category, a sentence may be imposed exceeding the range provided in category VI only for extraordinary circumstances in a defendant's criminal past like "wanton cruelty." This argument essentially challenges a sentencing court's authority to grant any upward departure on the facts of this case. Thomas relies principally on *United States v. Coe,* 891 F.2d 405, 413 (2d Cir.1989) (noting "in extraordinary circumstances, even the highest of the six [criminal history categories] might be inadequate") and *United States v. Cervantes,* 878 F.2d 50, 55 (2d Cir. 1989). He particularly emphasizes language in *Cervantes* that refers to "wanton cruelty" as one example of a compelling circumstance in an earlier offense that could warrant a significant upward departure. *Id.*

We cannot adopt the suggestion that *Cervantes* somehow narrowed the discretionary language of § 4A1.3, which bears repeating. Section 4A1.3 states there may be "a case of an egregious, serious criminal record in which even the guideline range for a Category VI criminal history is not adequate to reflect the seriousness of the defendant's criminal history" and provides that an upward departure may be warranted in such circumstances. The section does not specify that the "egregious, serious" nature of prior offenses must involve violent or especially reckless behavior. It would accordingly be wrong to read *Cervantes* as establishing "wanton cruelty" as the only kind of conduct demonstrating "egregious, serious" criminality sufficient to permit an upward departure from criminal history category VI. Such reading would impermissibly narrow § 4A1.3 and must fail for several reasons.

One reason is that the facts of *Cervantes* did not involve a departure from the highest criminal history category, and its *dicta* does not purport to set limits on category VI departures. Another reason is that the language in *Cervantes* on which Thomas relies merely states that "only the most compelling circumstances—for example, prior misconduct accompanied by wanton cruelty" would justify an extra departure beyond the next highest criminal history category. *See* 878 F.2d at 55. That language clearly discusses "wanton cruelty" as simply one example of "compelling circumstances"—not as the *sole* circumstance that would permit a significant upward departure. A third reason is that U.S.S.G. § 4A1.3 refers broadly to an "egregious, serious record" on the part of a defendant as authorizing an upward departure. Had the Sentencing Commission wanted to limit § 4A1.3's coverage to violent criminal conduct, it could have so stated.

Significantly, no other circuit has limited the availability of an upward departure from criminal history category VI to particularly violent criminal pasts. *See, e.g., United States v. Bernhardt,* 905 F.2d 343, 345–46 (10th Cir.1990) (upward departure from category VI upheld where defendant had been "defrauding people nearly his entire adult life"); *United States v. Christoph,* 904 F.2d 1036, 1038, 1041–42 (6th Cir.1990) (upward departure from category VI permissible where defendant had long criminal history mostly involving credit card fraud), *cert. de-*

*nied,* 498 U.S. 1041, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991); *United States v. Brown,* 899 F.2d 94, 96–98 (1st Cir.1990) (upward departure from category VI affirmed where defendant demonstrated long history of theft, criminal mischief and disorderly conduct). We are thus unwilling to adopt Thomas' view that an upward departure from category VI should only be permitted in circumstances of "wanton cruelty" and adhere instead to the language of § 4A1.3 allowing such a departure where a defendant possesses an "egregious, serious" criminal past not adequately reflected in criminal history category VI.

◼ From the district court's comments at sentencing, it is obvious that it was departing based on what it viewed as an egregious, serious record. Particularly considered were the following facts concerning Thomas: 1) his criminal history included 17 criminal history points, well above the 13–point threshold to category VI; 2) he committed a number of crimes that were not added to his criminal history points because they were outdated; 3) he committed the current offense while awaiting trial on another offense; and 4) he was the subject of numerous outstanding bench warrants. We have upheld upward departures based on non-similar outdated offenses. *See United States v. Diaz–Collado,* 981 F.2d 640, 644 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2934, 124 L.Ed.2d 684 (1993).

Under these circumstances, the sentencing court properly granted an upward departure pursuant to § 4A1.3. *Cf. Christoph,* 904 F.2d at 1041–42 (departure above category VI for defendant with 17 criminal history points and prior criminal conduct not counted in criminal history). It also sufficiently articulated its reasons for departure. We now turn to whether the district court appropriately selected the sentence imposed.

II  Methodology of Upward Departure

◼ Appellant next urges that even assuming the district court had the authority to upwardly depart, the method by which it imposed the 36–month sentence on him was flawed and unguided. He asserts his sentence must be vacated and his case once

again remanded for re-sentencing. We remain unpersuaded for a number of reasons.

First, the guidelines applicable at the time Thomas was sentenced provided little help for courts contemplating departures from criminal history category VI. At that time, U.S.S.G. § 4A1.3 simply noted, "[in the] case [of an egregious, serious criminal record], a decision above the guideline range for a defendant with a Category VI criminal history may be warranted." U.S.S.G. § 4A1.3 (Nov. 1991). The guidelines provided no further guidance as to how an upward departure should be structured under those circumstances. Whatever assistance there was could be found under 18 U.S.C. § 3553(c)(2) (1988), which simply instructed the sentencing judge to give a "specific reason" when imposing a sentence outside the guideline range.

Second, we are unpersuaded that the case law relied on by Thomas requires a mechanistic approach to departure. Here, Judge Glasser essentially gave his reasons for departing and then announced the sentence he concluded was appropriate under the circumstances. Appellant insists that lower-level departures should have been first considered and rejected before the 36–month sentence was given. At one point, appellant's brief suggests that the district court should have generated hypothetical criminal history categories above category VI and then considered and rejected imaginary categories VII, VIII, etc. until an appropriate range was found. We do not think such an inflexible procedure is called for.

The cases Thomas relies on do not establish that such a mechanistic, level-by-level departure is mandated by the law of this Circuit, either in this case—that lies beyond the cap of the criminal history category of the guidelines table—or even in every case that produces an upward departure within the guidelines table. Appellant again rests heavily on our decisions in *Coe* and *Cervantes.* In *Cervantes,* we observed that when departing to a higher criminal history category on the basis of § 4A1.3, a district court should consider the intervening criminal history categories. *See* 878 F.2d at 54. Shortly after *Cervantes* was decided we elab-

orated on its suggestion in *Coe*, where we stated that a judge making a § 4A1.3 criminal history upward departure was required "to proceed sequentially through the categories, considering whether the next highest category adequately reflected the seriousness of the defendant's record." *Coe*, 891 F.2d at 412. That procedure applies whether an upward departure is to compensate for the "seriousness of the defendant's past criminal conduct" or "the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3; *Coe*, 891 F.2d at 412. Significantly, neither *Coe* nor *Cervantes* involved an upward departure from category VI, the highest criminal history category, and so neither points to the proper path to be followed in the present case.

Third, our case law concerning vertical, offense-level departures under U.S.S.G. § 5K2.0 exhibits a clear trend away from this sort of rigid exactitude. In reviewing vertical departures in offense level, we have recently declined to require mechanical departures even though a case decided within months of *Coe* and *Cervantes* also seemed to establish a similar level-by-level framework for offense-level departures. In *United States v. Kim*, 896 F.2d 678 (2d Cir.1990), we stated that "when an offense level is deemed inadequate and a judge is contemplating a 5K departure by moving vertically down the sentencing table to a more serious level, the judge should consider the next higher levels in sequence to determine if they adequately reflect the seriousness of the defendant's conduct." *Id.* at 685.

Despite its specific suggestions, *Kim* has not been construed to require mechanistic departures in vertical, offense-level departure cases. More recent cases have interpreted *Kim* as not directing district courts to employ a step-by-step technique in departures, even when a departure falls squarely within the guidelines table and a level-by-level departure could easily be accomplished. In *United States v. Rodriguez*, 968 F.2d 130 (2d Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 140, 121 L.Ed.2d 92 (1992), for example, we affirmed a 6–level increase in a defendant's offense level even though the district court had not proceeded level-by-level in determining the appropriate upward departure. There we acknowledged that "*Kim* and its progeny were not ... intended to be a straightjacket." *Id.* at 140. After observing that *Kim* simply intended for courts to use the sentencing table for guidance, we concluded that "[a] mechanical level-by-level review of the extent of the upward departure was unnecessary." *Id.*

Similarly, in *United States v. Hernandez*, 941 F.2d 133, 140 (2d Cir.1991), we approved an upward departure in offense level where the district court did not follow the procedures set forth in *Kim*. In *United States v. Campbell*, 967 F.2d 20, 26 (2d Cir.1992), we engaged in a detailed review of *Hernandez* and the other cases distinguishing *Kim*. There we sustained a seven-level increase in offense level where *Kim*'s procedures had not been followed. *Id.* In *Campbell* we stated that sentences based on an upward departure in offense level would be upheld so long as the district court carefully explained its reasons for departing and so long as the departure was reasonable. We acknowledged this was the rule even when the district court failed to explain why it rejected each intermediate level. *Id.*

Although few cases in our circuit have considered horizontal criminal history departures since *Coe* and *Cervantes, Campbell* ruled that *Coe* and *Kim* were distinguishable. When a district court contemplates an upward departure, *Campbell* read *Coe* as *requiring* that the intervening criminal history categories be considered when a court departs upwardly from a criminal history category, but interpreted *Kim* as only *suggesting* that intervening offense levels be considered when an offense-level departure is involved. *See id.* at 25. We need not rely on this slender distinction because *Coe* has no application to the facts presently before us since it did not concern an upward departure from category VI.

We are persuaded that given the fact that level-by-level departures in offense levels were not required by our case law and given the further fact that *Coe* did not establish procedures for departures from criminal history category VI, we should be most hesitant to insist upon a mechanistic departure in this

case where the defendant's criminal history category was already at the outermost edge of the sentencing guidelines table. It seems unduly burdensome to saddle sentencing courts with the task of rewriting the sentencing table to include hypothetical higher criminal history categories. Our hesitation finds support in the Sentencing Commission's rejection of this approach when it amended § 4A1.3 in 1992.

This provides a fourth reason behind our decision. Certainly no exact formula for an upward departure in this type of case was set out in the guidelines applicable at the time Judge Glasser sentenced this appellant. The Sentencing Commission later revised the guidelines—after Thomas' sentencing—to provide more direction in cases of upward departures beyond criminal history category VI. When the Commission did so, it rejected the approach now urged by Thomas. Instead, the guidelines suggest that sentencing courts "should" proceed down the vertical axis of the guidelines table—that which usually governs offense levels—when departing from the maximum criminal history category. *See* U.S.S.G. § 4A1.3 (Nov. 1992).

A sentencing court contemplating an upward departure from criminal history category VI—that which appears on the horizontal axis of the sentencing table—is thus instructed to "mov[e] incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case." *Id.* Whether it will be *Kim* or whether it will be *Coe* that controls upward departures from criminal history category VI, accomplished through proceeding vertically down the offense levels, is a perplexing question that will no doubt someday arise. This is not that day. The question we face concerns only the limited issue of whether the district court here properly calculated the upward departure based on the much less specific guidance in place before § 4A1.3 was amended in 1992.

Fifth, appellant's belief that the 1992 amendment to the guidelines merely expressed what had been the Commission's unspoken intent with regard to upward departures beyond category VI is misplaced.

Not only was the approach the Commission eventually selected somewhat counterintuitive, since it treats criminal history like an offense-level characteristic, but no other circuit considering upward departures beyond criminal history category VI embraced that approach prior to § 4A1.3's amendment. *See, e.g., Brown*, 899 F.2d at 97–98. Even those circuits that followed level-by-level approaches where a sentencing court created hypothetical criminal history categories beyond category VI did not require such a rigid procedure actually be adhered to. For example, though in *United States v. Schmude*, 901 F.2d 555, 560 (7th Cir.1990), the Seventh Circuit stated that while a district court may use the 10–15 percent increases between criminal history categories as a guide, it ruled that "the question of degree of departure is *solely* one of reasonableness." *Id.* (emphasis added).

Sixth, the reasoning of our sister circuits that have reviewed this issue is sensible and persuasive. Every circuit that has decided the issue of an upward departure beyond criminal history category VI has declined to require a mechanistic approach and has concluded that the district court's departure will be upheld so long as it is reasonable. *E.g., Bernhardt*, 905 F.2d at 345 (Tenth Circuit upholding upward departure from category VI so long as departure "reasonable"); *Christoph*, 904 F.2d at 1041–42 (Sixth Circuit finding upward departure beyond category VI properly granted where resulting sentence "reasonable"); *Brown*, 899 F.2d at 98 (First Circuit applying reasonableness test to upward departure beyond category CI); *United States v. Carey*, 898 F.2d 642, 645–46 (8th Cir.1990) (Eighth Circuit reviews method of setting upward departure beyond category VI by looking to whether resulting sentence "reasonable"); *United States v. Joan*, 883 F.2d 491, 495–96 (6th Cir.1989) (Sixth Circuit relying upon reasonableness of upward departure from category VI); *see also United States v. Jackson*, 921 F.2d 985, 991–93 (10th Cir.1990) (en banc) (Tenth Circuit noting that "a district court departing beyond category VI should explain why that category fails to adequately reflect the seriousness of the defendant's criminal history").

These cases square with the Supreme Court's teaching of *Williams v. United States,* —— U.S. ——, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992), which declared that once a reviewing court has determined that an upward departure was justified, "the court of appeals may affirm the sentence so long as it is also satisfied that the departure is reasonable...." *Id.* at ——, 112 S.Ct. at 1121.

As a consequence, we hold the district court properly decided the sentencing issue before it under the November 1991 version of U.S.S.G. § 4A1.3 it was charged to apply. It was surely not reversible error for it not to proceed on the record to discuss and reject possible lower-level departures. Such would be a meaningless exercise for a sentencing judge in whom is confided the obligation to depart when he or she believes defendant's egregious, serious criminal record warrants it. The district court carefully enumerated Thomas' prior offenses, highlighted that many of them had not contributed to his criminal history category, and considered the other relevant factors in specific detail. By proceeding in this manner, it seems apparent that the district court simultaneously discussed why it was upwardly departing from the guidelines and, in effect, indicated its reasons for departing to such an extent.

The sentencing judge was not required to conduct a level-by-level departure horizontally based on fictitious criminal history categories, nor was he then obliged to proceed vertically down the offense levels of the sentencing table. Sentencing courts cannot read the mind of the Sentencing Commission and divine what specific guidance it might provide to them in the future. All that is required is that such a court exercise its best judgment under the guidelines in force at the time of sentencing.

### III Reasonableness of Sentence

■ Because the decision to grant an upward departure was justified on the facts of this record and in light of the guidelines in force at Thomas' sentencing, our review of the upward departure is to ascertain whether it was reasonable. Defendant's argument that the district court's choice of a 36–month sentence was unreasonable lacks merit.

Judge Glasser's upward departure to a 36–month sentence from a 12–18 month guideline range was reasonable based on the fact that it was designed to compensate for an incredible range of criminal behavior not incorporated into the guideline range. The sentencing court's doubling of the maximum sentence is not dispositive on the issue of reasonableness. *Cf. United States v. Jones,* 908 F.2d 365, 368 (8th Cir.1990) (seven-times increase over maximum guideline sentence found reasonable based on defendant's criminal history). As the Supreme Court explained in *Williams,* —— U.S. at ——, 112 S.Ct. at 1121, the reasonableness of a departure "looks to the amount and extent of the departure in light of the grounds for departing." We analyze reasonableness in departure cases in an individualistic, case-by-case approach. *See Campbell,* 967 F.2d at 26.

■ Setting a sentence of three years is not so dramatic when it is remembered that the original recommendation of the Probation Department represented a relatively modest sentence ranging from one and a half years to two years. We have upheld the reasonableness of upward departures more than doubling defendants' potential sentences in situations where more than 18 months was added to a defendant's sentence. *See id.* at 27 (upward departure from 15–21 month guideline range to 54–month sentence found reasonable under the circumstances).

In the present case the district court clearly articulated its reasons for granting an upward departure. It stated that criminal history category VI did not adequately reflect the seriousness of Thomas' conduct. It further observed that many of Thomas' prior offenses had not been counted in his criminal history category and carefully enumerated each of Thomas' offenses beginning with his 1970 criminal trespass conviction. This history included approximately 20 convictions and arrests over a 20–year period; eight convictions went uncounted in Thomas' criminal history due to their outdated nature. Significantly, the current offense was committed while appellant was on bail on pending charges. At sentencing three other cases were pending against him, each of which was also committed while Thomas was out on

bail. At least four bench warrants remained outstanding against Thomas. Given this long and continuing criminal past, the upward departure to a 36–month sentence was eminently reasonable.

A survey of similar cases in other circuits supports the reasonableness of the departure in the case at hand. For example, in *Christoph,* 904 F.2d at 1041–42, the Sixth Circuit ruled a departure from a 33–41 month range to a 60–month sentence reasonable under similar facts. *See also Bernhardt,* 905 F.2d at 345–46 (Tenth Circuit affirmed reasonableness of upward departure from 18–24 month range to 60–month sentence based on defendant's life-long history of fraud); *Brown,* 899 F.2d at 96–98 (First Circuit held reasonable district court's upward departure to 21–month jail term from three to nine month guideline range for possession of stolen mail where defendant's criminal past not adequately represented by his category VI criminal history); *Joan,* 883 F.2d at 495–96 (Sixth Circuit stated upward departure from 57–71 month range to 120–month sentence reasonable given seriousness of defendant's past conduct). Here an upward departure imposed by an experienced district court judge from a possible one and a half year sentence to a three-year sentence was well within reason given Thomas' extraordinarily lengthy record of recidivism.

## IV Other Arguments

We have carefully considered appellant's remaining arguments and find them without merit. Although Thomas correctly asserts that at one point the district court did mistakenly criticize his record as having some 40 offenses, nothing suggests that the court thought that this was the fact at sentencing when it painstakingly listed each of defendant's offenses. The sentencing court had inaccurately referred to 40 offenses at a February 27, 1992 hearing when it discussed the fact that paragraphs 18 through 58 of the presentence report contained extensive prior misconduct by Thomas. At the March 10 sentencing hearing, it corrected itself when it listed the offenses individually; at an October 14, 1992 hearing, the district court also noted that Thomas had "about 29 prior of-

fenses." From this it is clear the sentencing court did not misunderstand the nature or extent of Thomas' criminal history.

Moreover, nothing in U.S.S.G. § 4A1.3 prohibited it from taking into account the remote, but continuous and repeated offenses that had not been counted in Thomas' criminal history category. *See Diaz–Collado,* 981 F.2d at 644.

## CONCLUSION

For the above stated reasons, the sentence imposed is affirmed.

KEARSE, Circuit Judge, dissenting:

I respectfully dissent. Though I agree with the majority that the district court adequately explained why it believed it should depart from the imprisonment range provided by the federal Sentencing Guidelines ("Guidelines"), I disagree with the majority's conclusion that because the departure was above criminal history category ("CHC") VI, the Guidelines' highest CHC, the court had no obligation to explain the extent of its departure.

With respect to any departure the sentencing court is faced with two questions. The first is whether to depart at all. If that question is answered in the affirmative, the second question is what should be the extent of the departure. For multi-step CHC departures, this Court, beginning with *United States v. Cervantes,* 878 F.2d 50, 55 (2d Cir. 1989), and *United States v. Coe,* 891 F.2d 405, 412–13 (2d Cir.1989), which the majority discusses, and continuing in other cases, *see, e.g., United States v. Stevens,* 985 F.2d 1175, 1185 (2d Cir.1993); *United States v. Jakobetz,* 955 F.2d 786, 806 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 104, 121 L.Ed.2d 63 (1992); *United States v. Sappe,* 898 F.2d 878, 882 (2d Cir.1990), has required the sentencing court to state its reasons for bypassing intermediate steps and arriving at the final departure category. Though these cases did not involve departures above the highest CHC, they plainly stand for the principle that where the magnitude of the departure is substantial, the sentencing court should make clear on the record why it chose

that magnitude. *Cf. United States v. Campbell*, 967 F.2d 20, 26–27 (2d Cir.1992) (noting, even with respect to offense-level departures, as to which we do not require step-by-step explanations, that the thrust of our prior rulings is that the district court "must make clear on the record how the court determined the magnitude of the departure").

Similarly, several other circuits that have considered the issue have ruled that the sentencing court must provide some reasoned justification of the extent of a given departure. *See, e.g., United States v. Molina*, 952 F.2d 514, 522 (D.C.Cir.1992) ("[W]e hold that the trial courts must supply *some* reasoned basis for the extent of post-category VI departures.") (emphasis in original); *United States v. Cash*, 983 F.2d 558, 561–62 (4th Cir.1992) (when sentencing court deems CHC VI inadequate, it has three options: (1) decide not to depart; (2) extrapolate from the existing guidelines to create hypothetical CHCs above CHC VI; (3) analogize to career offender provisions), *cert. denied,* —— U.S. ——, 113 S.Ct. 2380, 124 L.Ed.2d 284 (1993); *see also United States v. Cruz–Ventura,* 979 F.2d 146, 150–51 (9th Cir.1992) (vacating sentence departing from CHC IV to beyond CHC VI despite fact that "degree of departure d[id] not appear excessive on its face and may be reasonable," because "district court did not adequately state its reasons for the amount of the departure on the record" and thus may have relied on reasons that were inadequate); *see generally United States v. Jackson*, 921 F.2d 985, 991–93 (10th Cir.1990) (en banc).

The sentencing court in the present case detailed Thomas's prior record and noted that, in accordance with Guidelines procedure, some of his offenses had been excluded from consideration in calculating his CHC; the court concluded that in light of Thomas's record as a whole, the Guidelines' prescribed prison term of 12–18 months was not enough. Thus, the court appropriately answered the first departure question, *i.e.,* whether any departure at all was warranted. Without further explanation, however, the court imposed a prison term of 36 months. It gave no reasons whatever as to why it believed that a departure doubling or trebling the

Guidelines-prescribed prison term, rather than a smaller departure, if indeed it considered smaller departures, was appropriate.

By any standard this was a large departure. For example, in the Guidelines sentencing table, the increase in prescribed prison terms from one CHC to the next is generally about 10–20%. The sentence imposed on Thomas was 200–300% of the imprisonment range prescribed for him, plainly the equivalent of a multi-step increase. In each of the two offense-level categories of the table that encompass both a 12–18–month term and a 36–month term, the pertinent CHCs are four steps apart. (For offense-level 12, the pertinent CHCs are II and VI; for offense-level 13, they are I and V.) Thus, the magnitude of the departure here was the equivalent of at least four CHCs. In its brief on this appeal, the government rates the departure here as the equivalent of five CHCs.

Further, though at the time Thomas was sentenced the Guidelines gave no instruction as to how to calculate a criminal history departure above CHC VI, later amendments confirm that a departure from 12–18 months to 36 months is a multi-step departure. In the current version of the Guidelines, the Sentencing Commission directs the sentencing court to structure a criminal history departure above CHC VI by moving incrementally down the CHC VI column to a higher offense level to determine the desired higher imprisonment range. *See* Guidelines § 4A1.3 (Policy Statement) (incorporating amendments through Nov. 1, 1992). Applying this newly prescribed methodology to Thomas's case, in order to reach a range that includes 36 months the sentencing court would have to move down six steps.

Despite the magnitude of the departure, the majority never grapples with the question of why a departure of 200–300% was appropriate in this case. Each time the majority approaches that question, it answers with the statement that the district court adequately explained why it thought a departure was warranted. That answered the question of "whether." It did not answer the question of "why to this extent".

I do not mean to suggest that if the sentencing court here had given any indication

that it considered a lesser departure and stated why it believed such a departure would not suffice I could not find the present sentence permissible. However, since the ultimate goal of the Guidelines is to achieve similarity in sentences for similar offenders, and since our precedents require the court to state its reasons for the magnitude of the departure when it departs from one CHC to a nonadjacent CHC provided for by the Guidelines, it seems to me illogical to conclude that no such explanation is required when there is a large departure above the top CHC, into a realm with no boundaries.

For these reasons, I would vacate the judgment and remand to permit the district court to resentence Thomas and, with respect to any large departure above the imprisonment range provided by the Guidelines, explain its reasons for the magnitude of the departure.