**UNITED STATES of America, Appellee,**

v.

**Earl HARRIS, Defendant–Appellant.**

**No. 450, Docket 93–1366.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 18, 1993.

Decided Jan. 4, 1994.

James I. Glasser, Asst. U.S. Atty., Bridgeport, CT (Albert S. Dabrowski, U.S. Atty. for the District of CT, Althea E. Seaborn, Asst. U.S. Atty., of counsel), for appellee.

Howard C. Eckenrode, Milford, CT, for defendant-appellant.

Before: LUMBARD, PIERCE, and MINER, Circuit Judges.

LUMBARD, Circuit Judge:

Defendant-appellant Earl Harris, a/k/a Fred Johnson, appeals from a judgment of the United States District Court for Connecticut, Daly, J., imposing a sentence of fifty-four months imprisonment, three years supervised release, $480 in restitution, and a $50 special assessment. Harris argues that the district court: (1) improperly failed to grant a two-level reduction for acceptance of responsibility and (2) erred in departing upward from the applicable Sentencing Guidelines offense level. We affirm.

On November 5, 1992, sixty-three United States postal money orders were stolen during an armed robbery of a United States Post Office. On November 18, 1992, Harris cashed one of these postal money orders, made payable to Earl Harris for $450, at the Baja Vega Grocery Store in Bridgeport, Connecticut. On November 19, 1992, Harris attempted to cash another of these stolen postal money orders, made payable to Fred Johnson, at the Connecticut State Check Cashing in Bridgeport. On the same day, Harris presented a third stolen postal money order, made payable to Earl Harris for $350, at the Baja Vega Grocery Store. Harris received $30 and was to return later to receive the balance of $320.

When Harris was arrested on November 23, 1992, he was in possession of a black imitation semi-automatic pistol, two check cashing cards in the name of Earl Harris, a Bridgeport Human Affairs Identification Card in the name of Fred Johnson, and two Bridgeport Welfare Identification Cards, one in the name of Earl Harris and one in the name of Fred Johnson.

In a January 1993 plea agreement, Harris agreed to waive indictment and to plead guilty to a one-count information charging him with possession of stolen U.S. postal money orders in violation of 18 U.S.C. § 500. The government conditionally agreed:

> to recommend that the Court reduce by two levels the defendant's Adjusted Offense Level under the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. This recommendation is conditioned upon the defendant's full and complete disclosure to both the Government and the Probation Office of the circumstances surrounding his commission of the offense.

The agreement also stated that if the defendant "violates any term or condition of this agreement ... the Government may void this agreement in whole or in part."

After Harris entered a guilty plea, the United States Probation Office prepared a Presentence Investigation Report ("PSR"). The PSR found Harris's base offense level was four. U.S.S.G. § 2B1.1(a). It recommended an increase of one level under U.S.S.G. § 2B1.1(b)(1)(B) because the loss exceeded $100, resulting in an adjusted offense level of five. Additionally, the PSR recommended that Harris receive no reduction for acceptance of responsibility because he had refused numerous opportunities for rehabilitation and drug counseling, and had reverted to the use of drugs. The Probation Office found that Harris had 27 criminal history points, which placed him in criminal

history category VI. The combination of offense level five and criminal history category VI calls for a sentence of 9–15 months. However, the PSR recommended a departure upward from this range because Harris's criminal history category under-represented the seriousness of his past conduct and the likelihood that he would commit future crimes.

At sentencing on April 23rd, the court found with regard to the reduction for acceptance of responsibility:

> under all the circumstances, I'm going to adopt the position of the presentence report in that regard. I do not believe, I have never believed, that simply pleading guilty entitles one to the acceptance of responsibility reduction. And on the facts of this case, I do not think you're entitled to them.

The court next considered the PSR's recommendation that the court depart upward from the sentencing range of 9–15 months. The court found "that the sentencing guidelines do not adequately take into account the particular circumstances of this case or of this Defendant." The court noted the following "particular circumstances" in support of its conclusion: Harris had 27 criminal history points, twice what was necessary to place him in the highest category; he had 15 additional convictions that were not counted towards his criminal history point total; and he cashed the stolen money orders less than seven months after he had been released from serving an eight-year sentence for robbery. Altogether, Harris had eleven convictions for crimes of violence including nine convictions for robbery. Based on these circumstances, the court concluded that Harris's criminal history category did not reflect the continuum of his past conduct, the seriousness of his past offenses, and the likelihood that he would commit other crimes. Thus, the court departed upward from offense level five to offense level seventeen.

The twelve-level departure placed Harris in a sentencing range of 51–63 months.

Based on this range and the statutory maximum of 60 months, the court sentenced Harris to 54 months.

*Acceptance of Responsibility*

■ The district court's decision to deny a two level reduction was well within its discretion.[1] By waiving indictment, signing the plea agreement, and entering a guilty plea, Harris presented "significant evidence" that he accepted responsibility. U.S.S.G. § 3E1.1, Application Note 3. However, the record contains ample evidence of conduct inconsistent with acceptance of responsibility. First, Harris violated the terms of his release by moving out of the YMCA without notifying the court, counsel or the U.S. Attorney. Second, his urine tested positive for morphine and codeine. Third, he failed to take advantage of opportunities for drug rehabilitation and counseling. These findings provided ample support for the district court's denial of a two level reduction for acceptance of responsibility under Sentencing Guidelines § 3E1.1. *See* U.S.S.G. § 3E1.1 Application Note 1(g) (permitting the court to consider the defendant's "post-offense rehabilitative efforts (*e.g.*, counseling or drug treatment)" in determining whether the defendant has accepted responsibility). Moreover, "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility." U.S.S.G. § 3E1.1, Application Note 5. Whether the defendant has accepted responsibility is a factual question, and "[a] district court's determination in this regard should not be disturbed unless it is 'without foundation.'" *United States v. Irabor*, 894 F.2d 554, 557 (2d Cir.1990) (quoting *United States v. Thomas*, 870 F.2d 174, 176 (5th Cir.1989)).

*Upward Departure*

The Sentencing Guidelines provide guidance to sentencing judges, not a comprehensive and inflexible set of rules to govern every situation. To that end, the court may depart from the Guidelines when "there exists an aggravating or mitigating circum-

---

1. Harris does not appear to contest the government's decision not to recommend the two level reduction because of Harris's violation of the plea agreement. Even without the government's recommendation, however, the sentencing court was free to grant the reduction if it found that Harris had accepted responsibility for the offense.

stance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C.A. § 3553(b) (West Supp.1993). For example, such a departure is warranted "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3. The Sentencing Commission recognized that "there may, on occasion, be a case of an egregious, serious criminal record in which even the guideline range for Criminal History Category VI is not adequate to reflect the seriousness of the defendant's criminal history." *Id.*

■ Here the record justifies a departure upward from the Guideline range for criminal history category VI. First, Harris had 27 criminal history points, more than twice what was necessary to place him in the highest category. In determining this total, the PSR only considered Harris's conduct between 1975 and 1987; thus, his 15 convictions prior to 1975 did not count towards his 27 points. Second, Harris cashed the stolen money orders less than seven months after he had been released from serving an eight year sentence for robbery. Third, his record included eleven convictions for crimes of violence, including nine convictions for first or second degree robbery. The district court properly concluded that even the highest criminal history category did not adequately represent the seriousness of Harris's past conduct and the likelihood that he would commit other crimes.

Harris argues that the district court applied a flawed methodology in departing to offense level seventeen. He relies on § 4A1.3, which provides that when a court makes "an upward departure from Criminal History Category VI, the court should structure the departure by moving *incrementally* down the sentencing table to the next higher offense level in Criminal History Category

VI until it finds a guideline range appropriate to the case." U.S.S.G. § 4A1.3 (emphasis added). Harris argues that this language required the court to consider each level above offense level five until it found the appropriate level.

The district court was not required to take this mechanistic approach to departures. In numerous cases decided in the last few years, we have considered whether the sentencing judge must perform a step-by-step analysis when moving down the vertical (offense level) axis and across the horizontal (criminal history category) axis of the sentencing table.[2] Most recently, in *United States v. Thomas,* 6 F.3d 960 (2d Cir.1993), we held that when departing upward from criminal history category VI, a sentencing judge need not take a step-by-step approach as long as the departure is reasonable.

The 1992 amendments to the Sentencing Guidelines cast some doubt on *Thomas*'s vitality. The pre–1992 Guidelines permitted the sentencing court to depart upward from category VI under the same circumstances as the current Guidelines. However, § 4A1.3 provided no guidance as to how the court should proceed with such a departure. When departing upward from any criminal history category other than six, courts can depart horizontally to the criminal history category that matches the seriousness of the defendant's prior offenses. Since there is no category higher than six, when courts wanted to depart upward from that category under the pre–1992 Guidelines, they had to choose among other approaches such as (1) moving horizontally to fictitious criminal history categories above six, (2) departing vertically to a higher offense level within criminal history category VI, or (3) choosing a sentence without explicitly departing along either axis.

The 1992 amendments to § 4A1.3 addressed this gap, providing that "the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case." Although we

---

**2.** For a thorough discussion of that line of cases, see *United States v. Thomas,* 6 F.3d 960, 964–67

(2d Cir.1993).

decided *Thomas* after the 1992 amendments became effective, the district court in that case had sentenced the defendant under the pre–1992 Guidelines. Thus, we decided the case based on the earlier Guidelines, and explicitly left it for another day to determine whether the 1992 amendment to § 4A1.3 required a step-by-step approach.

■ We now hold that the Guidelines, as amended, do not impose upon the district courts the duty to follow a rigid step-by-step approach when departing to a higher offense level under criminal history category VI. Section 4A1.3 provides that the court "*should*" move incrementally down the table until it finds the appropriate level; it does not say that the court "must" or "shall" move incrementally. Therefore, we read § 4A1.3 as merely suggesting an approach, rather than mandating a step-by-step analysis. This interpretation gives sentencing courts guidance where it was completely lacking before the 1992 amendments, but does not restrict them.

Appellant's interpretation of § 4A1.3 is mechanistic and would impose a "straightjacket" on sentencing judges. *See Thomas*, 6 F.3d at 965. We refuse to require a "meaningless exercise" every time there is a departure. *See Id.* at 967. "[W]here a departure is warranted, the emphasis should be on ascertaining a fair and reasonable sentence, not on subscribing slavishly to a particular formula." *United States v. Aymelek*, 926 F.2d 64, 70 (1st Cir.1991). Sentencing judges should not be required to conduct unnecessary procedures.

■ The twelve level departure was "reasonable." *Thomas*, 6 F.3d at 967–68. Harris has a long, serious and unremitting criminal history far in excess of what is required to reach the highest criminal history category. Of his forty prior convictions, nine involved first or second degree robbery. Given such a history, it was reasonable for the district court to impose a sentence that approached the statutory maximum for the offense.

Harris argues that the departure was not reasonable because the district court imposed the same offense level as if Harris had been sentenced as a career offender under U.S.S.G. § 4B1.1. This argument does not persuade us; we believe that it was reasonable for the court to choose a sentence comparable to one given to a career offender. Harris escaped career offender status only because the instant crime was not a crime of violence or a controlled substance offense. He met—and far surpassed—all other requirements for career offender treatment.

In summary, the district court acted well within the "considerable latitude" afforded to sentencing judges in making upward departures. *United States v. Stephenson*, 921 F.2d 438, 441 (2d Cir.1990).

Affirmed.