108 F.3d 330
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Kenneth MOORE, Defendant-Appellant.
 No. 96-1381.
 United States Court of Appeals, Second Circuit.
 Feb. 20, 1997.
 
 Appearing for Appellant: EARLE GIOVANNIELLO, Danilowitz & Giovanniello, New York, N.Y.
 Appearing for Appellee: LESLIE CORNFELD, Assistant United States Attorney, Eastern District of New York, Brooklyn, N.Y.
 Present: McLAUGHLIN, CALABRESI, LAY,* Circuit Judges.
 ORDER
 Kenneth Moore appeals from the sentence he received following his June 11, 1996, conviction on one count of unauthorized use of an access device, in violation 18 U.S.C. §§ 1029(a)(2) and (c)(1), and one count of conspiracy to use unauthorized access devices, in violation of 18 U.S.C. §§ 1029(b)(2) and (c)(1). The sentence was entered in the United States District Court for the Eastern District of New York (Block, J.) after a plea of guilty.
 
 
 1
 In August 1992, Moore was arrested by New Jersey police for aggravated assault and weapons possession.[1] He was convicted in state court for these and various other crimes and was sentenced to seven years in custody. Before his conviction, Moore admitted that, during a one-year period prior to his August 1992 arrest, he had engaged in a fraudulent scheme to obtain and use emergency replacement American Express credit cards. Moore facilitated this scheme by repeatedly posing as an American Express customer and claiming that his card had been stolen. Upon receiving an emergency replacement card in the mail, Moore would make a series of cash withdrawals. Over the course of the year, Moore illegally obtained approximately thirty-five credit cards and defrauded American Express of about $400,000. This credit card fraud later formed the basis for Count One of the federal information before us.
 
 
 2
 Count Two was based on Moore's alleged conspiratorial conduct in April of 1994. While he was incarcerated for the state crimes, Moore continued to obtain credit information from American Express by telephone and through other sources. He solicited an undercover federal agent to help him carry out a fraudulent scheme analogous to the one in which he had engaged two years earlier. Moore explained to the agent exactly how to obtain emergency replacement cards, make cash withdrawals with those cards, and launder the proceeds.
 
 
 3
 On the basis of his 1991-92 and 1994 conduct, and while he was still incarcerated for the state crimes, Moore was charged in December 1994 with credit card fraud and conspiracy to commit credit card fraud. He pleaded guilty to both counts the following year and was sentenced to 84 months imprisonment and three years supervised release. He was also required to pay $121,000 in restitution. His sentence was to run consecutively with his state sentence and also represented a two-level upward departure from the sentencing range prescribed by the Sentencing Guidelines.
 
 
 4
 Moore now appeals this sentence, arguing first that the district court erred in making his sentence for Count One run consecutively with the remainder of his state sentence, and second that the district court improperly departed upward. We reject both of these contentions.
 
 1. Consecutive Sentences
 
 5
 United States Sentencing Guidelines § 5G1.3 provides:
 
 
 6
 (a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.
 
 
 7
 (b) If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.
 
 
 8
 (c) (Policy Statement) In any other case, the sentence for the instant offense shall be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable incremental punishment for the instant offense.
 
 
 9
 Moore concedes that subsection (a) applies to Count Two of the information, since that count is based on Moore's conspiring with an undercover agent while he was in prison. Moore thus does not dispute that his sentence for Count Two was properly imposed to run consecutively to his state sentence. Subsection (a) does not, however, apply to Count One since the conduct that forms the basis for that charge occurred between August 1991 and August 1992, when Moore was not imprisoned. Still, unless Count One is covered by subsection (b), the district court was free to impose consecutive sentences under subsection (c).
 
 
 10
 Moore argues that Count One falls squarely within the rule of subsection (b), and hence that the district court erred in imposing his sentence for Count One to run consecutively to his undischarged state term of imprisonment. According to Moore, his state sentence was for the very same credit card fraud that served as the ground for his conviction on Count One. It follows, according to Moore, that his state sentence "resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense," and therefore "the sentence for the instant offense [should have been] imposed to run concurrently to the undischarged term of imprisonment." U.S.S.G. § 5G1.3(b). We disagree.
 
 
 11
 Moore's state sentence was based on three separate convictions. The first conviction was for forgery. On November 24, 1991, Moore attempted to purchase $3,000 worth of furniture with a personal check in a name other than his own. To verify the check, Moore produced identification and an American Express card in that name. A suspicious employee called the police, and Moore was apprehended. Upon arresting him, the police discovered that Moore was carrying a firearm. The second conviction, for criminal possession of a weapon, derived from Moore's conduct on April 9, 1992. On that day, Moore made several expensive purchases with fraudulent American Express credit cards in a Manhattan department store. When he was approached by a security guard, Moore drew a gun, pointed it at the guard, and fled. He was apprehended in a nearby building. The third conviction was for aggravated assault and, once again, for possession of a weapon: on August 7, 1992, Moore attempted another purchase with a fraudulent American Express card, and when the police arrived, he pointed a handgun at one of the officers before being subdued.
 
 
 12
 It is true that all of these convictions were for conduct that had something to do with American Express cards. But that does not mean that they were for conduct "fully taken into account" in determining the offense level for the instant crime. Moore's federal conviction on Count One was for illegally using American Express cards to obtain objects of value worth more than $1,000. See 18 U.S.C. 1029(a)(2). The conduct that formed the basis for Count One was Moore's obtaining American Express cards and his using them to defraud American Express by making cash withdrawals in amounts totaling approximately $400,000. That is not the conduct that formed the basis for Moore's state convictions. None of the incidents giving rise to the state convictions involved Moore making cash withdrawals, successfully obtaining anything of value, or defrauding American Express: in the first crime he used the credit card as identification to support his unsuccessful attempt to write a bad check; in the second and third crimes he committed assaults with a firearm. In none of these incidents did he complete the purchases, obtain anything of value, or defraud the American Express company through the use of false credit cards.
 
 2. Upward Departure
 
 13
 United States Sentencing Guidelines § 4A1.3 reads, in pertinent part:
 
 
 14
 If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range. Such information may include, but is not limited to, information concerning:
 
 
 15
 (a) prior sentence(s) not used in computing the criminal history category (e.g., sentences for foreign and tribal offenses);
 
 
 16
 ...
 
 
 17
 (d) whether the defendant was pending trial or sentencing on another charge at the time of the instant offense;
 
 
 18
 ...
 
 
 19
 A departure under this provision is warranted when the criminal history category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes.
 
 
 20
 A district court may depart under section 4A1.3 even where, as here, the defendant's criminal record places him in the highest criminal history category. See id. ("The Commission contemplates that there may, on occasion, be a case of an egregious, serious criminal record in which even the guideline range for Criminal History Category VI is not adequate to reflect the seriousness of the defendant's criminal history. In such a case, a departure above the guideline range for a defendant with Criminal History Category VI may be warranted.").
 
 
 21
 The district court concluded that this was just such a case, and departed upwards by two offense levels on the basis of section 4A1.3(a) and (d). The court based its decision on four factors: "one, that the offense was committed while the defendant was on bail ...; two, that he was a fugitive from justice at that time ...; three, that three of [his prior] convictions ... were not counted in the category of criminal history points because they were related cases; and four, that the entire record reflects the use of firearms." Judge Block indicated that he was relying on the aggregate of these four factors as the basis for his departure.
 
 
 22
 We review, de novo, a district court's conclusion that a factor is a permissible basis for departure, and, for abuse of discretion, its actual decision to depart. Koon v. United States, 116 S.Ct. 2035, 2046-47 (1996). We find that the district court had authority to depart on the basis of each of the factors it listed, and that it acted well within its discretion in choosing to depart.
 
 
 23
 The Sentencing Guidelines explicitly provide that a departure may be warranted where the defendant "committed the instant offense while on bail or pretrial release for another serious offense." U.S.S.G. § 4A1.3. Not only was Moore out on bail for his April 1992 weapons conviction at the time that he committed the fraud charged in Count One, he was also a fugitive from justice at that time, having failed to appear for two scheduled court hearings. The district court was free to consider these facts in determining whether Moore's criminal history category accurately represented the seriousness of his criminal record and the likelihood of recidivism.
 
 
 24
 The district court's reliance on the fact that three of Moore's prior petit larceny convictions were not counted in computing criminal history because they were "related cases" under U.S.S.G. § 4A1.2(a)(2) was also proper. Moore contends that, because § 4A1.2 specifically excludes these offenses from consideration in calculating criminal history, the district court erred in taking them into consideration in choosing to depart. Cf. United States v. Fonner, 920 F.2d 1330, 1334 (7th Cir.1990) (district court erred in departing upward on the basis of defendant's prior convictions which were not counted in calculating criminal history pursuant to U.S.S.G. § 4A1.2(e)(2) insofar as they were more than ten years old, since the Sentencing Commission had already contemplated that such convictions should not be taken into consideration). But Moore fails to recognize that § 4A1.2(a)(2), Application Note 3, explicitly states that "[t]he court should be aware that there may be instances in which this definition [of related cases] is overly broad and will result in a criminal history score that underrepresents the seriousness of the defendant's criminal history and the danger that he presents to the public.... In such circumstances, an upward departure may be warranted." This case presents just such circumstances.
 
 
 25
 Finally, the district court, in departing upward, properly considered the fact that Moore has frequently used firearms in the commission of his numerous criminal offenses. Section 4A1.3 allows a departure whenever "the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct." Judge Block expressed his opinion that "the fact that a weapon was pointed at a police officer by the defendant and there appears to be a habit of displaying firearms, perhaps as many as on three occasions" was further evidence that a departure was warranted. Certainly the district court was free to take into account Moore's repeated use of firearms in ways that endangered the lives of police officers and citizens as one factor indicating that Moore's prior criminal conduct was more serious than had been reflected in his criminal history category.[2]
 
 
 26
 Over a period of approximately ten years, Moore has engaged in nearly-constant criminal activity, ranging from petit larceny, fraud, and attempted robbery, to aggravated assault and possession of a weapon. He has been arrested and convicted time and time again. Many of these offenses were committed while he was out on bail, while he was out on parole, while he was a fugitive from justice, and even while he was in prison. As such, the district court acted well within its discretion in concluding that Moore's "criminal history category significantly under-represent[ed] the seriousness of [his] criminal history [and] the likelihood that [he] will commit further crimes." U.S.S.G. § 4A1.3. See United States v. Thomas, 6 F.3d 960, 963-64 (2d Cir.1993) (affirming upward departure from the highest criminal history category where: 1) the defendant had a long history of criminal conduct; 2) many of the defendant's prior convictions had not been included in calculating his criminal history; 3) the defendant committed the instant offense while awaiting trial on another offense; and 4) the defendant was the subject of numerous outstanding bench warrants); United States v. Black, 78 F.3d 1, 8-9 (1st Cir.) (holding that the district court was justified in departing upward from the highest criminal history category where the record showed that the defendant was constantly in trouble and seemed completely undeterred by prior arrests and sentences), cert. denied, 117 S.Ct. 254 (1996).
 
 
 27
 We have examined all of Moore's contentions, and find them to be without merit. The district court's judgment is therefore affirmed.
 
 
 
 *
 The Honorable Donald P. Lay, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 The Pre-Sentence Report, which explains in detail Moore's criminal conduct, was filed under seal. All references in this order to the contents of that report are to information recounted in the unsealed briefs
 
 
 [2]
 The district court expressly noted that, in departing upward, it was not considering any firearms-related conduct for which Moore had already been convicted in state court